STATE OF NEBRASKA, APPELLEE, V. RONALD RAYMOND ELL, APPELLANT.

246 N. W. 2d 594

Filed November 3, 1976. No. 40539.

Frank B. Morrison and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Paul W. Snyder, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

In count I of a four count information, the defendant, Ronald Raymond Ell, was charged with killing Michael Kellogg in the perpetration of or attempt to perpetrate a robbery, which constitutes first degree murder under section 28-401, R. R. S. 1943; and in counts II, III, and IV, he was charged with maliciously shooting Russell Wolf, George E. Allen, and Joseph Nepodal, respectively, with the intent to kill, wound, or maim each of those individuals, under section 28-410, R. R. S. 1943. Trial to a jury commenced July 21, 1975; and on August 1, 1975, the jury found Ell guilty of shooting police officers George E. Allen and Joseph Nepodal with intent to kill, wound, or maim, as charged in counts III and IV of the information, but the jury was unable to reach a verdict on count I of the information charging the defendant with murder in the perpetration or attempt to perpetrate a robbery, and also was unable to reach a verdict on count II of the information, which charged defendant with shooting at Officer Russell Wolf with intent to kill, wound, or maim.

The court thereupon declared a mistrial as to counts I and II, and the defendant was retried as to those counts commencing October 24, 1975. The jury in the second trial returned a verdict of guilty on counts I and II. On November 10, 1975, the defendant was sentenced to life imprisonment in the Nebraska Penal and Correctional Complex on count I, and to terms of 16 2/3 to 50 years imprisonment on each of the other three counts. The latter sentences were ordered to be served concurrently with each other, but consecutively to the sentence of life imprisonment imposed on count I. Defendant Ell has now appealed his convictions and sentences to this court. We affirm.

In support of his appeal, defendant makes two assignments of error which he contends were prejudicial and require reversal of his convictions in the trial court. We set them out verbatim as they appear in his brief:

"I. The District Court committed reversible error in both the first and second trial in not granting the defendant's motion for a continuance, for a change of venue, for total sequestration of the jury during voir dire, and for sequestering the jury during trial, all for the reason that pre-trial publicity prior to trial and the probability of such adverse publicity during trial prevented the defendant from receiving a fair trial, requiring his convictions be reversed. II. The District Court committed reversible error in overruling defense objections to the admissibility of Exhibit 16 for lack of foundation as it relates to the charge of shooting at Officer Allen."

The evidence shows that on February 21, 1975, two persons entered a Hinky Dinky Store at 30th and Weber Streets in Omaha during business hours and took approximately $2,100 in checks, cash, and food stamps. Both persons were armed, and removed the described property at gunpoint. A store manager observed the individuals fleeing in a 1965 Chevrolet, noted the license number, and called the police. The manager, some of the store employees, and several police officers then pursued the robbers.

During the chase, several shots were fired from the suspects' automobile, driven by a third person, at the pursuing police officers, striking one of their vehicles. The chase ended at 25th and Iowa Streets in Omaha, where the gun battle continued between the officers and the suspects, who had left their vehicle and had run between houses in the neighborhood. Michael Kellogg, a civilian who lived in the neighborhood, had armed himself and joined the police in firing at the suspects.

During the gun battle, two police officers were wounded. One of the suspects was shot and killed by the police. Witnesses observed one of the suspects, John Edward Rust, later named as a co-defendant in this case, as he shot and killed Michael Kellogg. Defendant Ell was eventually apprehended in some bushes, after re-

quests to come out. Police found a pistol, a sawed-off shotgun, and the property taken from Hinky Dinky in the defendant's hiding place.

At the time of the robbery in February, several newspaper articles were published describing the chase and subsequent shootings. One of these articles showed a picture of defendant Rust in the hospital; another consisted of an interview with one of the wounded police officers. There was also television and radio coverage of the robbery, although the defendant introduced no evidence as to the nature or extent of that coverage. On the day prior to the beginning of the voir dire at the first trial, another newspaper article appeared announcing that the case was to go to trial, and describing the robbery and shootings. The defendants' pictures appeared in this article. Although there was undoubtedly more media coverage of the case during and subsequent to the first trial and prior to the second, the defendant has not brought such publicity to the attention of either the trial court or this court.

Prior to both trials, the defendant moved for a continuance, a change of venue, individual and separate examination of each prospective juror during the voir dire, and sequestration of the jury during trial. The ground for these motions was that the pretrial publicity described above jeopardized the defendant's right to a fair and impartial trial.

The specific ground for defendant's motion for a continuance was the appearance of the newspaper article describing the case on the day prior to the beginning of the voir dire. The trial court overruled this motion because it concluded that such publicity would arise whenever the case actually went to trial, and therefore a continuance would not obviate this kind of publicity.

The motion for a change of venue was overruled because the trial court concluded that granting a change of venue and moving the case to an adjoining county pursuant to section 29-1301, R. R. S. 1943, would do

nothing to minimize the effects of publicity, since media coverage of the case was just as broad in adjoining counties as it was in Douglas County, the place of trial.

The trial court overruled the motion for sequestration of the jury during trial because it concluded that sequestration would not effectively achieve the goal of insulating jurors from any publicity that might arise during trial. The court noted that the jury would have to be sequestered in a hotel or motel, where it would have access to radio, television, and newspaper coverage of the trial. The trial court pursued an alternate course of instructing the jury at both trials not to read or listen to any news coverage of the case during the trial.

The trial court did uphold the motion for separate examination of jurors during the voir dire at the first trial. Examination of the first 27 prospective jurors proceeded separately. The court then concluded that publicity was not a significant factor in the case, and concluded the voir dire by examination of the talesmen in four groups of 6, and one last group of 18. The defendant, however, was permitted to question each prospective juror individually, even when the court proceeded with the group examinations. There is no record of the actual voir dire of the jury for the second trial, but the voir dire was conducted, challenges exercised, and jury selected in 1 day, a much shorter period than for the first trial, which suggests that no unusual trouble was experienced in selecting the second jury.

It is fundamental that: "Due process requires that the accused receive a trial by an impartial jury free from outside influences." Sheppard v. Maxwell, 384 U. S. 333, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966). In Sheppard the court held that where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the trial court should take steps such as a continuance, a change of venue, or sequestration of the jury to protect its processes from prejudicial out-

side interferences. The question in this case, then, is whether there was such prejudicial pretrial publicity that the defendant was denied a fair trial because of the trial court's failure to take the protective steps requested by the defendant in his pretrial motions, described above. We will discuss each motion separately.

It has long been the rule in this state that an application for a continuance is addressed to the sound discretion of the trial court and its ruling thereon will not be held erroneous unless the record discloses an abuse of discretion. It is no abuse of discretion to deny a continuance unless it clearly appears that the defendant suffered prejudice. State v. Lee, 195 Neb. 348, 237 N. W. 2d 880 (1976); State v. Newton, 193 Neb. 129, 225 N. W. 2d 562 (1975); Sundahl v. State, 154 Neb. 550, 48 N. W. 2d 689 (1951); Maher v. State, 144 Neb. 463, 13 N. W. 2d 641 (1944). In this case, the ground for the defendant's motion for a continuance was that a newspaper article appeared 1 day prior to the voir dire at the first trial. The newspaper article itself was in no way inflammatory and could not be said to have prejudiced prospective jurors. It merely described the robbery and shootings, and stated that the defendant was one of the persons charged with the crimes. In fact, the information in the newspaper article was essentially the same as that given to each talesman before questioning at the voir dire. The defendant has made no showing that he suffered prejudice as a result of the trial court denying a continuance. The denial of the defendant's motion was clearly not an abuse of discretion, and the trial court was correct in concluding that whenver the case did come to trial such media coverage would likely arise. Therefore we hold that the overruling of the defendant's motion was not error. State v. Newton, *supra*.

In regard to change of venue, a motion for a change of venue in a criminal case is addressed to the sound discretion of the trial court and its ruling will not be

disturbed unless a clear abuse of discretion is shown. State v. Irwin, 191 Neb. 169, 214 N. W. 2d 595 (1974); State v. Goham, 187 Neb. 34, 187 N. W. 2d 305 (1971); Sundahl v. State, *supra.* See, also, Robinson v. Wolff, 349 F. Supp. 514 (Neb., 1972). A survey of cases throughout the United States shows that among the relevant factors considered in determining whether a change of venue should be granted due to pretrial publicity are the nature of the publicity; the degree to which the publicity has circulated throughout the community; the degree to which the publicity circulated in areas to which venue could be changed; the length of time between the dissemination of the publicity complained of and the date of trial; the care exercised and ease encountered in selection of the jury; the number of challenges exercised during the voir dire; the severity of the offense charged; and the size of the area from which the venire is drawn. See Annotation, Pretrial Publicity in Criminal Case as Ground for Change of Venue, 33 A. L. R. 3d 17.

In this case, defendant points to no publicity that was inflammatory or prejudicial in nature. There was no vendetta against the defendant in the media. In fact, the defendant points to little publicity about the case at all other than the descriptions of the robbery and shootings at the time they occurred. The publicity here bears not the slightest resemblance to the publicity in Sheppard v. Maxwell, *supra,* a case where the very jury which heard the case was exposed to highly inflammatory media coverage both prior to and during the trial. Defendant points to no publicity between the time of the robbery and the newspaper article appearing just prior to the first trial in July 1975. Thus the nature and degree of the publicity complained of did little to support defendant's motion for a change of venue.

Finally, as previously stated, the trial court took great care in selecting the jury, and that of the 69 talesmen in the venire at the first trial, only 11 were dismissed

for cause because they had formed an opinion as to the innocence or guilt of the defendant due to pretrial publicity. Had the pretrial publicity been as adverse and pervasive as the defendant now suggests in his brief, there would certainly have been more difficulty in finding prospective jurors who had not formed such an opinion. No problems of this nature arose during the trial.

In reviewing the record we find nothing to indicate that the trial court abused its discretion in denying a change of venue, and defendant has in no way demonstrated how he was prejudiced by the denial. Therefore the ruling of the trial court was not error. State v. Irwin, *supra;* Sundahl v. State, *supra.*

With regard to sequestering the jury during trial, the applicable rule of law is that whether or not a jury is kept together during a criminal trial is left to the discretion of the court. State v. Bautista, 193 Neb. 476, 227 N. W. 2d 835 (1975). If a criminal defendant makes no showing of prejudice due to failure of the trial court to sequester the jury during trial, or if the record discloses no abuse of discretion on the part of the trial judge, denial of sequestration is not error. State v. Kirby, 185 Neb. 240, 175 N. W. 2d 87 (1970); Smith v. State, 111 Neb. 432, 196 N. W. 633 (1923).

The defendant has not brought to the attention of this court any publicity during either trial that might have prejudiced the jurors, let alone evidence that any of the jurors were actually exposed to publicity and prejudiced thereby. The trial court explicitly instructed the jurors during both trials not to read or listen to any media coverage of the case from the time of their questioning at the voir dire to the time of the verdict. The defendant makes no showing of prejudice, and no abuse of discretion appears in the record. Therefore we hold that it was not error to overrule defendant's motion for sequestration of the jury during his trials.

The final issue relevant to publicity is whether the court erred in not examining each prospective juror

separately and individually during the voir dire. It is a well-established rule that in the selection of a jury a party ordinarily has no right to examine a juror out of the presence of all other jurors. State v. Fiegl, 184 Neb. 704, 171 N. W. 2d 643 (1969); State v. Kirby, 185 Neb. 240, 175 N. W. 2d 87 (1970). Defendant contends that this case is not "ordinary" because of the pretrial publicity, and because the case involved a capital offense. We have already discussed the nature and degree of the pretrial publicity, and do not find it to be such a significant factor as to require separate and individual examination of all talesmen. The fact that this case involved a capital offense also is not sufficient, even in conjunction with the publicity that existed in this case, to take this case out of the rule described above, particularly in light of the extreme care the trial court took in selecting the jury.

We note that the trial court began the voir dire at the first trial by separately examining each talesman. The first 27 prospective jurors were examined separately, a process which took 2 full days, and only 4 of these jurors were dismissed for cause due to having formed opinions as a result of pretrial publicity. At this point the trial court concluded that pretrial publicity was not a significant factor in the case, and concluded the voir dire in groups. Of the remaining 42 talesmen, only 7 were dismissed for cause due to having formed opinions about the case because of publicity. Although a majority of the jurors actually chosen for trial had read or heard about the robbery at the time it occurred, most had only vague recollections; and each and every one stated that he or she had formed no opinion as to the innocence or guilt of the defendant. An examination of the voir dire shows that the trial court used great care in insuring that no jurors ultimately selected for the jury were prejudiced because of pretrial publicity.

Defendant points to no facts showing that he was

prejudiced because of the procedures used to select his jury at both trials. No abuse of discretion appears on the record, and therefore we conclude that the trial court committed no error in conducting the voir dire as he did, and in following the general rule described above. State v. Kirby, *supra.*

We have also examined defendant's other assignment that the court erred in admitting exhibit 16 because of lack of foundation. Exhibit 16 was a photograph depicting a bullet hole in a tree behind which Officer Allen was allegedly taking cover. The applicable rule is that photographs are admissible in evidence if shown to be true and correct representations of the places or subjects they purport to represent at times pertinent to the inquiry. Their admission is largely within the discretion of the trial court and unless an abuse of discretion is shown, error may not be predicated thereon. State v. Radcliff, 188 Neb. 236, 196 N. W. 2d 119 (1972). A photograph proved to be a true representation of what it depicts may properly be received in evidence if a proper foundation is laid. State v. Williams, 182 Neb. 372, 155 N. W. 2d 189 (1967).

We note in passing that at the time the photograph in question was admitted in evidence, a police officer had testified that the photograph was a true and accurate representation of the tree, and it showed a bullet hole which the officer had himself seen. No objection was made to this testimony. The person who took the photograph also testified that it was a true representation of the tree, and that it showed a fresh injury to the tree. No objection was made to this testimony. The photograph, therefore, merely illustrated prior testimony of witnesses; and this provided an adequate foundation for the admission of the photograph in evidence. The trial court clearly did not abuse its discretion in admitting the photograph into evidence.

The contentions of the defendant in this appeal are

without merit, and the judgment of the trial court must be affirmed.

AFFIRMED.