STATE OF NORTH CAROLINA v. JOHN VINCENT BEAL

No. 564A82

(Filed 28 August 1984)

Criminal Law § 135.8 — first-degree murder — sentencing phase — considering defendant's prior adjudication as youthful offender an aggravating circumstance — error

The trial court committed prejudicial error by allowing the jury to consider defendant's prior adjudication as a youthful offender under the Alabama Youthful Offender Act as a prior "felony conviction" which could be considered as an aggravating circumstance under the North Carolina capital punishment statute. G.S. 15A-2000(e)(3).

Justice MEYER dissenting.

Justice COPELAND joins in this dissenting opinion.

APPEAL of right by the defendant from the judgment and sentence entered by the *Honorable Robert M. Burroughs, Judge Presiding*, at the 13 September 1982 Session of the Superior Court, LINCOLN County, following his conviction of murder in the first degree. Heard in the Supreme Court 12 March 1984.

*Rufus L. Edmisten, Attorney General, by Ralf F. Haskell, Assistant Attorney General, for the State.*

*Richard E. Jonas and Richard L. Kennedy, for defendant-appellant.*

FRYE, Justice.

Defendant brings forward numerous assignments of error relating to the guilt-innocence phase of his trial and one assignment of error relating to the sentencing phase of his trial. After carefully reviewing all the defendant's assignments of error, we find no prejudicial error in the guilt-innocence phase of his trial.

However, during the sentencing phase, the trial court committed prejudicial error when it allowed the jury to consider defendant's prior adjudication as a youthful offender under the Alabama Youthful Offender Act as a prior felony conviction which could be considered as an aggravating circumstance under the North Carolina capital punishment statute. Since this was the only aggravating circumstance which was presented to the jury, and since the record does not support the jury's finding of the aggravating circumstance upon which the sentencing court based its sentence of death, defendant's sentence of death must be overturned and a sentence of life imprisonment imposed in lieu thereof. G.S. 15A-2000(d)(2).

I.

The State's evidence disclosed that on Friday, 14 May 1982, the victim, Jodie Abernathy, age seventeen, and Sarah Lineberger, age eighteen, were riding around the general area of Lincolnton, North Carolina, in Ms. Abernathy's 1979 brown Sunbird Pontiac. After stopping at a local drugstore and a game room, the young women went to Gilbert's Trailer Park located off Highway 27 at approximately 9:00 p.m., so that Ms. Abernathy could give her boyfriend some prom pictures.

Upon arrival at Gilbert's Trailer Park, the young women discovered that a party was taking place at the trailer where Ms. Abernathy thought her boyfriend would be. This trailer was located beside the trailer of Pete Beal, the defendant's brother. The defendant also was at the trailer park visiting his brother.

While Ms. Abernathy and Ms. Lineberger were waiting for the arrival of Ms. Abernathy's boyfriend, Ms. Lineberger, who knew the defendant, began to talk to him while standing between the trailers. During the course of the conversation, defendant asked if anyone could take him home. Ms. Lineberger told defendant that she did not have a car; however, Ms. Abernathy said that she would take him home if he would buy her some gas. Between 9:30 and 10:00 p.m., Ms. Abernathy and defendant left the trailer park in Ms. Abernathy's car. Ms. Abernathy was driving the car and the defendant was sitting on the passenger side.

Defendant lived approximately nine miles from Gilbert's Trailer Park in a trailer located at the end of a graveled drive ap-

proximately four-tenths of a mile off Rural Public Road (herein-after RPR) #1312 in the Iron Station Community. Jim Price, for whom defendant worked, also lived on RPR #1312 on the same graveled drive as the defendant. No other residences are located along this drive.

At approximately 10:45 p.m., Mr. Price observed a dark car, maybe bronze or brown, with the lights out, going down the grav-el drive by his home toward the defendant's trailer. Although Mr. Price could not identify the occupants of the car, he stated that the person on the passenger side waved at him. At about 11:15 p.m., Mr. Price observed a car, which looked like the one he had seen earlier, coming from the direction of defendant's trailer with only its parking lights on.

On that same night, at approximately 11:00 p.m., Wilma Hoff-man, who lived on RPR #1312 about one-fourth of a mile from the Price residence and defendant's trailer, heard her dog and other dogs in the neighborhood barking. The dogs were still barking at 12:00 midnight. At that time, Ms. Hoffman went out on her porch. After listening for a few minutes, Ms. Hoffman heard "an awful moaning sound" three or four times which almost "frightened [her] to death." The moaning sounded human to her. The moaning sounds were coming from the general direction of the defendant's trailer.

During the early morning hours of 15 May 1982, Ms. Aber-nathy's car was found parked on the side of Philadelphia Church Road, a rural paved road in Gaston County, located approximately 3.3 miles from defendant's trailer. The keys were in the ignition and one of the windows was rolled down.

During the afternoon of 15 May 1982, Sergeant Robert Stacy of the Gaston County Police Department went to see the defend-ant at his trailer. He observed "smoke billowing from the trash can barrel at the end of the trailer." The barrel had a grate on top of it and a rock on top of the grate. Defendant went with Ser-geant Stacy to the Gaston County Police Department where several photographs were taken of him. Several scratches and abrasions were observed on the defendant's arms.

On Sunday, 16 May 1982, Lincoln County Sheriff Harven Crouse and several deputies went to defendant's trailer. Sheriff

Crouse looked inside the barrel at the end of defendant's trailer and removed a large bone from it. Several small bones were also observed in the barrel. He also saw a pair of gloves lying on the ground near the barrel and a plastic jug which was about one-third full of kerosene.

On Wednesday, 19 May 1982, the burned remains of a body, later identified as that of Jodie Abernathy, were discovered by searchers approximately 147 feet from defendant's trailer. The remains, which were sealed in plastic, were found in a washout covered with leaves, pine needles and plastic.

Paul Midgett, an acquaintance of the defendant, testified that sometime between 12:00 midnight and 3:00 a.m. on a Friday in May defendant telephoned him. Defendant said that a girl had given him a ride home and he had gotten her to go into the trailer. "[H]e wanted to get him a little bit and she wouldn't go for it." She slapped defendant. Defendant just "went off," "[w]ent crazy." Defendant knocked her down the hallway and out the door. When he knocked her out the door, she hit her head on a rock or a block. Defendant was scared, grabbed her by her hair and hit her on it [the rock or block] again. Defendant told him he was really scared and didn't know what to do. He put her in the trash barrel and poured kerosene on her and lit the kerosene. She would not burn up completely and later he pulled her remains out of the barrel and had "her stashed down at the trailer." Midgett also relayed the above facts to his parents through a letter written while he was in prison, and he later gave a statement to the police.

Dr. Page Hudson, the Chief Medical Examiner for the State of North Carolina and an expert in the field of forensic pathology, identified the remains which were found as being those of Ms. Abernathy. As a result of his examination of the remains, Dr. Hudson testified that he observed various skull injuries. He also observed a fracture of the front forehead area, and a fracture of the deep bone of the face in the sinus area. Additionally, he observed damage to the teeth and the chin area, as well as a fracture on the left and right side of the lower jaw.

Dr. Hudson testified that death was caused by "blunt force injury. Blunt force trauma to the head. A beating." In his opinion, more than one blow was inflicted upon the victim. Dr. Hudson

was unable to identify the instrument used to kill the victim. He could only state that it was something "very blunt and very heavy." Additionally, Dr. Hudson did not believe that a single fall would have caused the injuries suffered by the victim.

The defendant testified in his own behalf. Defendant stated that he and the victim were talking outside Ms. Abernathy's car, approximately seven or eight feet from his trailer. After asking her about whether Ms. Lineberger was still dating someone, defendant stated that he asked her, "What about you." In response to this question, Ms. Abernathy told him that if he tried anything, she would tell on him, and then she slapped him. Defendant stated that he hit her, and she spun around and fell against the steps of the trailer. She did not move again after she fell. According to defendant, Ms. Abernathy was dead.

Defendant then used Ms. Abernathy's car to drive around in an attempt to get aid for her. Eventually, he abandoned the car and walked back home, arriving at about midnight. He checked the victim again to see if she was alive. Defendant concluded that she was dead. Shortly thereafter, defendant placed Ms. Abernathy in the barrel and burned her body. He removed the remains that would not burn and hid them in the woods near his trailer.

Based upon the above evidence, the jury found defendant guilty of murder in the first degree.

At the sentencing hearing, one aggravating circumstance and several mitigating circumstances were submitted to the jury. The sole aggravating circumstance that was submitted to the jury was, "[t]he defendant had been previously convicted of a felony involving the use or threat of violence to the person." The predicate offense proffered by the State to support a finding of the above aggravating circumstance was defendant's previous adjudication as a youthful offender under the Alabama Youthful Offender Act. The jury found the existence of the above-quoted aggravating circumstance, and did not find any mitigating circumstances. Subsequently, the jury recommended that defendant be sentenced to death, and the trial court sentenced him accordingly.

## II.

The dispositive issue in this case relates to the sentencing phase of defendant's trial. That issue presents the following question for review by this Court: Did the trial court commit prejudicial error when it allowed the jury to consider defendant's prior adjudication as a youthful offender under the Alabama Youthful Offender Act as a prior felony conviction which could be considered as an aggravating circumstance under the North Carolina capital punishment statute? After carefully reviewing the North Carolina capital punishment statute, especially G.S. § 15A-2000(e)(3), the Alabama Youthful Offender Act and the cases which have construed the Act, we hold that the trial court committed prejudicial error by allowing the jury to consider defendant's prior adjudication as a youthful offender under the Alabama Youthful Offender Act as a prior "felony conviction."

In order to resolve this issue of first impression in this State, we have carefully studied and examined the Alabama Youthful Offender Act, Ala. Code §§ 15-19-1 through 15-19-7, and the cases which have construed this Act. The portions of the Alabama Youthful Offender Act which are pertinent to this case are Ala. Code §§ 15-19-1, 15-19-6 and 15-19-7. These statutes respectively provide as follows:

§ 15-19-1 Investigation and examination by court to determine how tried; consent of minor to trial without jury; arraignment as youthful offender.

(a) A person charged with a crime which was committed in his minority but was not disposed of in juvenile court and which involves moral turpitude or is subject to a sentence of commitment for one year or more shall, and, if charged with a lesser crime may be investigated and examined by the court to determine whether he should be tried as a youthful offender, provided he consents to such examination and to trial without a jury where trial by jury would otherwise be available to him. If the defendant consents and the court so decides, no further action shall be taken on the indictment or information unless otherwise ordered by the court as provided in subsection (b) of this section.

(b) After such investigation and examination, the court, in its discretion, may direct that the defendant be arraigned

as a youthful offender and no further action shall be taken on the indictment or information; or the court may decide that the defendant shall not be arraigned as a youthful offender, whereupon the indictment or information shall be deemed filed.

§ 15-19-6. Disposition upon adjudication.

(a) If a person is adjudged a youthful offender and the underlying charge is a felony, the court shall:

(1) Suspend the imposition or execution of sentence with or without probation;

(2) Place the defendant on probation for a period not to exceed three years;

(3) Impose a fine as provided by law for the offense with or without probation or commitment;

(4) Commit the defendant to the custody of the board of corrections for a term of three years or a lesser term.

(b) Where a sentence of fine is not otherwise authorized by law, then, in lieu of or in addition to any of the dispositions authorized in this section, the court may impose a fine of not more than $1,000.00. In imposing a fine the court may authorize its payment in installments.

(c) In placing a defendant on probation, the court shall direct that he be placed under the supervision of the appropriate probation agency.

(d) If the underlying charge is a misdemeanor, a person adjudged a youthful offender may be given correctional treatment as provided by law for such misdemeanor.

§ 15-19-7. Effect of determination; records not open to public inspection; exception.

(a) No determination made under the provisions of this chapter shall disqualify any youth for public office or public employment, operate as a forfeiture of any right or privilege or make him ineligible to receive any license granted by public authority, *and such determination shall not be deemed a*

*conviction of crime; provided, however, that if he is subsequently convicted of crime, the prior adjudication as youthful offender shall be considered.* (Emphasis added.)

(b) The fingerprints and photographs and other records of a person adjudged a youthful offender shall not be open to public inspection; provided, however, that the court may, in its discretion, permit the inspection of papers or records.

The above statutory provisions describe the procedures to be employed under the Alabama Youthful Offender Act, the possible dispositions upon adjudication as a youthful offender, and the effect of a determination that an individual is a youthful offender.

During the sentencing hearing which was held after the jury had found defendant guilty of murder in the first degree, the State attempted to establish the aggravating circumstance that "defendant had been previously convicted of a felony involving the use or threat of violence to the person." G.S. 15A-2000(e)(3). In its attempt to prove the above-quoted aggravating circumstance, the State relied upon defendant's prior adjudication as a youthful offender under the Alabama Youthful Offender Act. Over the objections of counsel for the defendant, the trial court allowed the State to introduce and read to the jury certified copies of the original indictment against defendant, his subsequent plea, and the resulting disposition of defendant's case based upon his adjudication as a youthful offender.[1] At the conclusion of the sentencing hearing, the sole aggravating circumstance submitted to and found by the jury was that "defendant had been previously convicted of a felony involving the use or threat of violence to the person." G.S. 15A-2000(e)(3).

Defendant contends that the trial court erred in allowing the jury to consider his prior adjudication as a youthful offender under the Alabama Youthful Offender Act as a prior felony conviction under G.S. 15A-2000(e)(3) of the North Carolina capital punishment statute. Defendant notes that the express language of

---

1. In view of the purposes and the reasons for which the Alabama Youthful Offender Act was enacted, we will not disclose the nature of the original charge which eventually led to defendant's adjudication as a youthful offender. To do otherwise would be contrary to the express language contained in Ala. Code § 15-19-7(b), which provides that the "record of a person adjudged a youthful offender shall not be open to public inspection."

Ala. Code § 15-19-7(a) provides that an adjudication as a youthful offender "shall not be deemed a conviction of crime."

The State contends that the trial court properly allowed the jury to consider defendant's prior adjudication as a youthful offender as a "felony conviction," relying upon that portion of Ala. Code § 15-19-7(a) which provides that "if he [the person adjudged a youthful offender] is subsequently convicted of crime, the prior adjudication as youthful offender shall be considered." The State also contends that "[w]hether such a determination is labeled an adjudication or conviction would seem to make no difference in respect to the nature of the crime committed and any subsequent consideration it should be given by a jury upon sentencing proceedings."

G.S. 15A-2000(e) of the North Carolina capital punishment statute provides, in pertinent part, as follows:

> Aggravating Circumstances. — Aggravating circumstances which may be considered shall be limited to the following:
>
> . . . .
>
> (3) The defendant had been previously convicted of a felony involving the use or threat of violence to the person.

This Court has interpreted G.S. 15A-2000(e)(3) as requiring proof that the defendant had been previously *convicted* of a felony involving the use or threat of violence to the person. *State v. Goodman*, 298 N.C. 1, 257 S.E. 2d 569 (1979). A charge or an indictment is insufficient to support a finding of a conviction. *Id.* at 23, 257 S.E. 2d at 584; *see also State v. Ell*, 196 Neb. 800, 246 N.W. 2d 594 (1976).

The purpose of the Alabama Youthful Offender Act has been stated as follows:

> The Alabama Youthful Offender Act was conceived for the purpose of protecting those who fall within its ambit from the stigma and practical consequences for a conviction of a crime. Accordingly, the Act provides for confidentiality in the proceedings and in the availability of the offender's records with regard to the adjudication.

*Raines v. State,* 294 Ala. 360, 366, 317 So. 2d 559, 564, *reh'g denied,* 294 Ala. 767 (1975).

In the instant case, it was clearly established that defendant was adjudicated a youthful offender in the Circuit Court of Calhoun County in February 1984. Therefore, the questions to be determined by this Court are whether that prior *adjudication* amounts to a *conviction* of a felony and whether it was properly considered in this case. In deciding those questions, we are guided by the explicit language of Ala. Code § 15-19-7(a) which provides, in pertinent part, that an adjudication as a youthful offender "shall not be deemed a conviction of crime; provided, however, that if he is subsequently convicted of crime, the prior adjudication as youthful offender shall be considered."

The Alabama courts have consistently held that the determination that the accused is a youthful offender is not a conviction. *Raines v. State,* 294 Ala. 360, 317 So. 2d 559, *reh'g denied,* 294 Ala. 767 (1975); *Thomas v. State,* Ala. Crim. App., 445 So. 2d 992 (1984); *Daniels v. State,* Ala. Crim. App., 375 So. 2d 523 (1979). Additionally, the Supreme Court of Alabama in *Ex parte Thomas,* Ala., 435 So. 2d 1324 (1982), has provided some insightful guidance concerning the meaning of the statutory language of Ala. Code § 15-19-7(a), which provides that if the youthful offender is subsequently convicted of a crime, "the prior adjudication as youthful offender shall be considered."

In *Ex parte Thomas,* the defendant had been convicted of third degree burglary. Prior to sentencing, the state gave notice that it wanted to have defendant sentenced as an habitual offender under the Habitual Offender Act. Thereafter, the trial court allowed the state to introduce evidence of a previous felony conviction of second degree burglary and a previous youthful offender adjudication. The defendant was subsequently sentenced to a term of imprisonment of ten years.

On appeal, the question presented for review was whether the sentence imposed was erroneous because it was based upon the erroneous admission and consideration of defendant's prior youthful offender adjudication. The Alabama Supreme Court noted that the sentence imposed by the trial court was within the range of permissible sentences under the Habitual Offender Act, regardless of whether one or two felony convictions were used.

Additionally, the court noted that the sentence imposed was permissible for defendant's present conviction, without taking into consideration the prior felony conviction or the prior youthful offender adjudication. Nevertheless, the court remanded the case to the trial court for a specific finding of whether the trial court had invoked the Habitual Offender Act.

In addressing the state's contention that it was proper for the trial court to consider defendant's prior adjudication as a youthful offender in determining the appropriate sentence to be imposed, the court stated:

> The State calls our attention to further language found in § 15-19-7 which states that if a youthful offender "is subsequently convicted of crime, the prior adjudication as youthful offender shall be considered." We hold that a prior youthful offender adjudication is properly considered in determining the sentence to be imposed within the statutory range for a later crime for which the defendant has been convicted. *That same youthful offender determination, however, may not be considered a prior felony conviction, as contemplated by the Habitual Offender Act, so as to bring the defendant within the purview of the higher sentence categories of that Act.* (Emphasis added.)

*Ex parte Thomas*, Ala., 435 So. 2d at 1326.

We find the facts and circumstances of *Ex parte Thomas* to be very similar to the facts and circumstances of the instant case. Therefore, we believe that the reasoning which was applied there is equally applicable to the instant case. We are also mindful of the fact that *Ex parte Thomas* is a decision of the highest court of Alabama, whose duty it is to interpret the laws of that state. That being so, the *Ex parte Thomas* decision, and more specifically the interpretation given Ala. Code § 15-19-7(a) by that court, is very persuasive authority which should be given substantial weight by this Court. We find no reasonable basis for distinguishing between the use of a prior youthful offender adjudication to prove a prior felony conviction under an habitual offender statute and the use of a prior youthful offender adjudication to prove a prior felony conviction under the North Carolina capital punishment statute. Therefore, we hold that the trial court committed prejudicial error by allowing the jury to consider de-

State v. Beal

fendant's prior youthful offender adjudication as a prior felony conviction. Such an adjudication does not amount to a prior felony conviction.

III.

In conclusion, we hold that the State's evidence was insufficient to support the submission to the jury of the aggravating circumstance that "defendant had previously been convicted of a felony involving the use or threat of violence to the person." G.S. 15A-2000(e)(3). Accordingly, we overturn defendant's sentence of death and impose a sentence of life imprisonment. *See* G.S. 15A-2000(d)(2). Therefore, the judgment below is vacated, and the defendant is sentenced to a term of imprisonment for the remainder of his natural life. Defendant is entitled to credit for any time previously spent in confinement as a result of these charges before the date of this judgment. An amended commitment shall be issued by the Superior Court, Lincoln County, in accordance with this judgment. *See State v. Jackson,* 309 N.C. 26, 305 S.E. 2d 703 (1983).

We have carefully reviewed all of the assignments of error raised by defendant relating to the guilt-innocence phase of his trial, and we find them to be without merit. Accordingly, we find that no error occurred during the guilt-innocence phase of defendant's trial.

Guilt-Innocence Phase—no error.

Sentencing Phase—death sentence vacated; sentence of life imprisonment imposed.

Justice MEYER dissenting.

I respectfully dissent from both the reasoning and result reached by the majority on the issue of whether defendant's prior adjudication under the Alabama Youthful Offender Act was properly considered in sentencing.

In 1974 the defendant, then twenty years old and serving in the United States Army, pled guilty in an Alabama court of law to a charge of rape, a crime involving the use or threat of violence to the person. The judgment of the Alabama court is as follows:

YOUTHFUL OFFENDER ACTION, SENTENCE BY COURT.
PROBATION DENIED

State of Alabama          )
Y.O. #6684 vs.            )   Youthful Offender Action
John Vincent Beal        )   *Charge: Rape*
    Youthful Offender )   *Guilty Plea as charged*
                         Sentence and Denial of Probation.

This the 4th day of February, 1975:

This Youthful Offender Action having commenced trial by the Court without the intervention of a Jury and the Defendant having pled guilty, *and the Court having adjudged the Defendant a Youthful Offender and guilty of the underlying offense of Rape and the Defendant having applied for probation:*

Comes now the Defendant in open Court in his own proper person and with Attorney, Honorable H. Darden Williams, and being asked by the Court if he had anything to say why the sentence of the law should not now be pronounced upon him says "Nothing" and before passing sentence the Court determines by examination of said Defendant and other evidence that said Defendant was by trade or occupation "a soldier, army of the United States of America" and he is of the white race, male sex, is twenty (20) years of age (d/b; May 11, 1954) and his physical condition is "good, need dental work."

It is considered, ordered and adjudged by the Court that the Youthful offender be and *he is hereby sentenced to imprisonment in the custody of the Director of the Board of Corrections of the State of Alabama for a term of three years, as punishment fixed by the Court, and, the Court hereby denies Probation.*

(Judge Wm. C. Bibb)

(Emphasis added.)

Beal was sentenced to three years imprisonment and received the benefits of adjudication as a youthful offender, thereby entitling him to the protections afforded that status under Alabama law. In 1982 this same defendant was convicted, in a

North Carolina court of law, of first degree murder. It is my position that whatever protections he was earlier afforded as a youthful offender were lost as a result of his subsequent conviction for first degree murder.

In North Carolina we have no statutory provision that would preclude consideration of defendant's prior plea of guilty to the charge of rape, irrespective of his youthful offender status. Furthermore, I believe that the language of the Alabama Youthful Offender Act, the policy underlying that statute, and the case law interpreting it dictate a result contrary to that reached by the majority.

I. North Carolina Law.

There is no authority under North Carolina law for affording the defendant the protections which he contends are afforded him under the Alabama Youthful Offender Act. Even in the case of *misdemeanors* (with the exception of certain misdemeanor drug violations) and in adjudications of juvenile delinquency, North Carolina law allows the judge to consider the prior convictions and adjudications.

G.S. § 15-223 provides, in pertinent part, that

> Expunction of records for first offenders under the age of 18 at the time of conviction of misdemeanor.—(a) Whenever any person who has not yet attained the age of 18 years and has not previously been convicted of any felony, or misdemeanor other than a traffic violation, under the laws of the United States, the laws of this State or any other state, pleads guilty to or is guilty of a misdemeanor other than a traffic violation, he may file a petition in the court where he was convicted for expunction of the misdemeanor from his criminal record. The petition cannot be filed earlier than two years after the date of the conviction or any period of probation, whichever occurs later, . . . . (b) If the court, after hearing, finds that the petitioner had remained of good behavior and been free of conviction of any felony or misdemeanor, other than a traffic violation, for two years from the date of conviction of the misdemeanor in question, and petitioner was not 18 years old at the time of the conviction in question, it shall order that such person be restored, in the contempla-

tion of the law, to the status he occupied before such arrest or indictment or information. No person as to whom such order has been entered shall be held thereafter under any provision of any laws to be guilty of perjury or otherwise giving a false statement by reason of his failure to recite or acknowledge such arrest, or indictment, information, or trial, or response to any inquiry made of him for any purpose.

The statute provides that the information in the file be disclosed to judges for the purpose of ascertaining whether the offender had previously been granted a discharge.

As the defendant in the present case was over the age of 18 when the offense was committed, and the offense with which he was charged was a felony—rape, he would not have been eligible to receive the benefits of G.S. § 15-223 in North Carolina.

When our legislature has deemed it appropriate, it has provided for the blanket protections which this defendant argues should be afforded him. G.S. § 90-96 provides for the expunction of records for first offense misdemeanor controlled substance violations. That section specifically provides that

(a) . . . Upon fulfillment of the terms and conditions, the court shall discharge such person and dismiss the proceedings against him. Discharge and dismissal under this section shall be without court adjudication of guilt and shall not be deemed a conviction for purposes of this section or for purposes of disqualifications or disabilities imposed by law upon conviction of a crime including the additional penalties imposed for second or subsequent convictions of this Article.

I read nothing in G.S. § 90-96, however, to suggest that these protections afforded in limited cases of first offense misdemeanor drug violations should extend to a felony rape conviction.

Finally, G.S. § 7A-638 provides that:

An adjudication that a juvenile is delinquent or commitment of a juvenile to the Division of Youth Services shall neither be considered conviction of any criminal offense nor cause the juvenile to forfeit any citizenship rights.

Significantly, this provision, unlike the Alabama Youthful Offender Act, makes no exception for consideration of the adjudica-

tion for subsequent sentencing purposes. Also of significance and consistent with its policy of protecting the youthful offender from the stigma of conviction, is that cases construing the Alabama Youthful Offender Act have held that one so adjudicated may not be impeached by the fact of his adjudication. North Carolina law is to the contrary. G.S. § 7A-676 provides for the expunction of records of juveniles adjudicated delinquent and undisciplined. G.S. § 7A-677, however, provides that

> (b) Notwithstanding subsection (a), in any criminal or delinquency case if the juvenile is the defendant and chooses to testify or if he is not the defendant and is called as a witness, the juvenile may be ordered to testify with respect to whether he was adjudicated delinquent.

Furthermore, similar to the provisions of G.S. § 15-223(d), G.S. § 7A-678 provides that "upon testifying in a criminal or delinquency proceeding [the juvenile] may be required by a judge to disclose that he was adjudicated a delinquent."

Whether viewed under North Carolina or Alabama law, the defendant in this case was clearly not a juvenile at the time he committed the offense. In fact, the Alabama Youthful Offender Act specifically excludes juveniles. Ala. Code § 15-19-1(a).

In summary, although our legislature has recognized, in limited cases, that juveniles, youthful offenders, and first offenders for drug violations may be entitled to and afforded protections through expunction of records, and that an adjudication of delinquency should not be considered a conviction, I find no authority in North Carolina to support the majority's conclusion that this defendant's plea of guilty to a charge of rape must be ignored in the sentencing phase of a capital case simply because he was afforded the status and protections of a youthful offender in Alabama.

II. Alabama Law.

The Alabama Youthful Offender Act, § 15-19-7(a), provides in pertinent part that determination as a youthful offender "shall not be deemed a conviction of crime; provided, however, *that if he is subsequently convicted of a crime, the prior adjudication as youthful offender shall be considered.*" The term "convicted of a crime" is not used in the narrow sense but is a broad phrase

which would include pleas of guilty and adjudications of delinquency where the offense was a felony. I read this language to mean that if a defendant is subsequently convicted of a crime, his prior adjudication as a youthful offender *must* then be considered in the sentencing for the subsequent crime.

The stated purpose of the Alabama Youthful Offender Act supports this interpretation. Ala. Code § 15-19-17(a) provides that "[n]o determination made under the provisions of this chapter shall disqualify any youth for public office or public employment, operate as a forfeiture of any right or privilege or make him ineligible to receive any license granted by public authority." In *Raines v. State*, 294 Ala. 360, 366, 317 So. 2d 559, 564, *reh'g denied*, 294 Ala. 767 (1975), the Alabama court noted that "[t]he Alabama Youthful Offender Act was conceived for the purpose of *protecting* those who fall within its ambit from *the stigma and practical consequences of a conviction for a crime.*" (Emphasis supplied.) Clearly, the Act is intended solely to protect those who, following a transgression in their youth, become law abiding citizens. However, equally clear is the fact that once subsequently convicted of a crime, those same individuals no longer need, nor are they entitled to protection "from the stigma and practical consequences of a conviction for a crime."

In *Thomas v. State*, 445 So. 2d 992 (Ala. 1984), after noting that a prior adjudication as a youthful offender may not be used to enhance punishment under the Habitual Offender Act, *see Ex Parte Thomas*, 435 So. 2d 1324 (Ala. 1982), the Alabama court stated:

> The purpose of the Youthful Offender Act is to protect "those who fall within its ambit from the stigma and practical consequences of a conviction for a crime." *Raines v. State*, 294 Ala. 360, 366, 317 So. 2d 559 (1975). It is clear, however, that the Act is not intended to prevent the consideration of the adjudication for every conceivable purpose during the entire life-time of the youthful offender. Under Section 15-19-7(a), if a youthful offender "is subsequently convicted of crime, the prior adjudication as youthful offender *shall* be considered." (Emphasis added.) Similarly, adjudication as a juvenile is admissible in "a disposition hearing in a juvenile court or in sentencing proceedings after conviction of a crime

for the purposes of presentence study and report." Alabama Code Section 12-15-72(b) (1975).

*Id.* at 994.

The court then noted that under the circumstances of the case then at bar (involving impeachment of a youthful offender's credibility) the "State's policy interest in protecting the confidentiality of a youthful offender's record must yield to the public's right to the integrity of the judicial system." *Id.*

*Ex parte Thomas*, 435 So. 2d 1324 is not dispositive of the issue. That case merely held that adjudication as a youthful offender may not be considered as a prior felony conviction *under the Alabama Habitual Offender Act.* The case does not preclude consideration of the underlying crime for sentencing in general.

G.S. § 15A-2000, our capital punishment statute, provides that: (a)(3) "Evidence may be presented as to *any matter that the court deems relevant to sentence,* and *may include* matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (e) and (f). *Any evidence which the court deems to have probative value* may be received." (Emphasis added.) Following defendant's conviction for first degree murder in this case, he was no longer entitled to the protection afforded by the Alabama Youthful Offender Act. For purposes of sentencing, there was no longer a policy interest in protecting the confidentiality of defendant's youthful offender record. There remained only "the public's right to the integrity of the judicial system." I would therefore hold that evidence pertaining to defendant's plea of guilty to a charge of rape is relevant to sentencing and may now be considered by the courts of North Carolina.

Justice COPELAND joins in this dissent.