Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/17/2018 09:09 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
BRITTNEY PRYCE, APPELLANT.
___ N.W.2d ___

Filed April 17, 2018.    No. A-17-310.

1. **Venue: Appeal and Error.** A motion for change of venue is addressed
   to the discretion of the trial judge, whose ruling will not be disturbed
   absent an abuse of discretion.
2. ____: ____. A trial court abuses its discretion in denying a motion to
   change venue when a defendant establishes that local conditions and
   pretrial publicity make it impossible to secure a fair and impartial jury.
3. **Presumptions: Jurors: Due Process.** Adverse pretrial publicity can
   create a presumption of prejudice in a community such that the jurors'
   claims that they can be impartial should not be believed. But juror expo-
   sure to information about a defendant's prior convictions or to news
   accounts of the crime with which he is charged does not alone presump-
   tively deprive the defendant of due process.
4. **Presumptions: Jurors.** Juror partiality may be presumed only in situa-
   tions where the general atmosphere in the community or courtroom is
   sufficiently inflammatory.
5. **Venue: Juror Qualifications: Presumptions.** A court will normally
   not presume unconstitutional juror partiality because of media coverage
   unless the record shows a barrage of inflammatory publicity immedi-
   ately prior to trial, amounting to a huge wave of public passion or result-
   ing in a trial atmosphere utterly corrupted by press coverage.
6. **Venue: Due Process.** Even the community's extensive knowledge about
   a crime or a defendant through pretrial publicity is insufficient in itself
   to render a trial constitutionally unfair when the media coverage consists
   of merely factual accounts that do not reflect animus or hostility toward
   the defendant.
7. **Venue.** Press coverage which is factual in nature cannot serve as the
   basis for a change of venue.

8. **Venue: Juror Qualifications.** Under most circumstances, voir dire examination provides the best opportunity to determine whether a court should change venue.

9. **Juror Qualifications.** The law does not require that a juror be totally ignorant of the facts and issues involved; it is sufficient if a juror can lay aside his or her impression or opinion and render a verdict based on the evidence presented in court.

10. **Venue: Juries: Proof.** A court must evaluate several factors in determining whether the defendant has met the burden of showing that pretrial publicity has made it impossible to secure a fair trial and impartial jury. These factors include (1) the nature of the publicity, (2) the degree to which the publicity has circulated throughout the community, (3) the degree to which venue could be changed, (4) the length of time between the dissemination of the publicity complained of and the date of the trial, (5) the care exercised and ease encountered in the selection of the jury, (6) the number of challenges exercised during voir dire, (7) the severity of the offenses charged, and (8) the size of the area from which the venire was drawn.

Appeal from the District Court for Custer County: Karin L. Noakes, Judge. Affirmed.

P. Stephen Potter for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

Moore, Chief Judge, and Riedmann, Judge, and Inbody, Judge, Retired.

Riedmann, Judge.

## INTRODUCTION

Brittney Pryce was convicted in the Custer County District Court of intentional child abuse resulting in death and sentenced to 30 to 40 years' imprisonment. She appeals, arguing that the court erred in denying her motion to change venue. We find no abuse of discretion in the denial of the motion and therefore affirm.

BACKGROUND

In July 2014, Pryce was charged by information with intentional child abuse resulting in the death of a 21-month-old child. On August 9, 2016, Pryce filed a motion to change venue, alleging that due to extensive pretrial publicity, she would be unable to get a fair trial in Custer County. At the hearing on her motion, Pryce offered into evidence five articles in support of her motion. The first article was published on "SandhillsExpress.com" on August 4 and reported that Pryce had appeared in court that morning and rejected a plea offer from the State. The article noted that a jury trial was scheduled to begin on August 22. The second article was also from the same website and published on June 23. It explained that a group advocating for child abuse victims appeared at a hearing in Pryce's case and that at the hearing, the court heard numerous pretrial motions. The article also noted that Pryce was accused of causing the death of a 21-month-old child who had been in her care and listed the dates for a final pretrial hearing and trial.

The third article Pryce offered into evidence was published on August 8, 2016, on the website of the Custer County Chief newspaper. This article stated that after the State and Pryce had offered and rejected plea agreements, the case would proceed to jury trial starting August 22. The article also reported that Pryce had been charged with second degree murder and child abuse leading to death of a child. However, although Pryce originally faced both charges, she had been bound over to district court on the child abuse charge only. Thus, at the time the article was published, only that charge remained.

The final two articles were published in the Custer County Chief but are not dated. It is clear from the contents of the articles, however, that they were published sometime in early 2014. They report details surrounding the child's death and the fact that Pryce and her mother had been arrested.

After the hearing, the district court entered an order denying the motion to change venue at that time. The court noted

that although Pryce had offered into evidence a sample of the nature of the pretrial publicity, there was no evidence regarding the degree to which the publicity had circulated through the community or in areas to which venue could be changed, though the court acknowledged that that type of evidence was difficult to obtain prior to jury selection. Thus, the court found that Pryce failed to meet her burden that a venue change was warranted.

Jury selection began in this case on August 22, 2016, and lasted for 2 days. After the process was complete, Pryce renewed her motion to change venue. The district court opined that an impartial jury had been selected and denied the motion.

At the conclusion of trial, the jury found Pryce guilty. She was sentenced to 30 to 40 years' imprisonment. This timely appeal follows.

## ASSIGNMENT OF ERROR

Pryce assigns that the district court erred in denying her motion to change venue.

## STANDARD OF REVIEW

[1] A motion for change of venue is addressed to the discretion of the trial judge, whose ruling will not be disturbed absent an abuse of discretion. *State v. Erickson*, 281 Neb. 31, 793 N.W.2d 155 (2011).

## ANALYSIS

Pryce argues that the denial of her motion to change venue was erroneous for two reasons. First, she claims that under *Irvin v. Dowd*, 366 U.S. 717, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961), we should presume prejudice in the community due to pretrial publicity. In the alternative, she asserts that even if juror bias is not presumed, her motion to change venue should have been granted when considering the applicable factors.

[2] Generally, all criminal cases shall be tried in the county where the offense was committed unless it shall appear to the

court by affidavits that a fair and impartial trial cannot be had there. See Neb. Rev. Stat. § 29-1301 (Reissue 2016). A motion for change of venue is addressed to the discretion of the trial judge, whose ruling will not be disturbed absent an abuse of discretion. *State v. Rodriguez*, 272 Neb. 930, 726 N.W.2d 157 (2007). A trial court abuses its discretion in denying a motion to change venue when a defendant establishes that local conditions and pretrial publicity make it impossible to secure a fair and impartial jury. *Id*.

[3,4] In *Irvin v. Dowd, supra*, the U.S. Supreme Court held that the overwhelming negative publicity against the defendant should have mandated a change of venue not just to a county adjoining the county in which the murders had occurred, but to a county geographically far enough removed to be untainted by the publicity. The Nebraska Supreme Court has stated that under *Irvin v. Dowd, supra*, adverse pretrial publicity can create a presumption of prejudice in a community such that the jurors' claims that they can be impartial should not be believed. *State v. Galindo*, 278 Neb. 599, 774 N.W.2d 190 (2009). But juror exposure to information about a defendant's prior convictions or to news accounts of the crime with which he is charged does not alone presumptively deprive the defendant of due process. *Id*. Juror partiality may be presumed only in situations where the general atmosphere in the community or courtroom is sufficiently inflammatory. *Id*.

[5] A court will normally not presume unconstitutional juror partiality because of media coverage unless the record shows a barrage of inflammatory publicity immediately prior to trial, amounting to a huge wave of public passion or resulting in a trial atmosphere utterly corrupted by press coverage. *Id*. The Nebraska Supreme Court has held that five newspaper articles containing information regarding the case failed to demonstrate that the publicity was so widespread to have corrupted the mind of all potential jurors—particularly when there was no evidence of the extent to which that publicity reached the community in question. See *State v. Schroeder*, 279 Neb.

199, 777 N.W.2d 793 (2010). See, also, *State v. Bradley*, 236 Neb. 371, 461 N.W.2d 524 (1990) (no abuse of discretion in denying motion to change venue for pretrial publicity where only five newspaper articles appeared within 4 months of jury selection).

[6,7] But the quantum of news coverage is not dispositive. *State v. Galindo, supra*. Even the community's extensive knowledge about a crime or a defendant through pretrial publicity is insufficient in itself to render a trial constitutionally unfair when the media coverage consists of merely factual accounts that do not reflect animus or hostility toward the defendant. *Id*. Although the Supreme Court has frequently stated that the defendant must show pervasive, misleading pretrial publicity, the more important consideration is whether the media coverage was factual, as distinguished from invidious or inflammatory. *Id*. Press coverage which is factual in nature cannot serve as the basis for a change of venue. *Id*.

In the present case, at the hearing on Pryce's initial motion to change venue, she offered into evidence five news articles containing information about the case. It is clear that three of the five articles were published shortly before trial began in August 2016. The other two articles appear to have been published around the time Pryce was arrested in 2014. But each article contains only factual information, which is insufficient to support a finding that the general atmosphere in the community or courtroom is sufficiently inflammatory. We note that one article published on August 8, 2016, erroneously stated that Pryce was still facing charges of second degree murder and child abuse resulting in death, when in fact, only the child abuse charge remained pending. However, this error alone is not enough to establish that the entire jury pool would be biased against Pryce.

We conclude that the five news articles containing factual, as opposed to inflammatory, information regarding the case were insufficient to support a finding that the publicity was so widespread to have tainted the entire pool of potential jurors.

Thus, the district court did not err in denying the motion to change venue at that time.

[8] Under most circumstances, voir dire examination provides the best opportunity to determine whether a court should change venue. *State v. Schroeder, supra*. Indeed, the U.S. Supreme Court based its decision in *Irvin v. Dowd*, 366 U.S. 717, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961), partially on the information gleaned during voir dire. There, six murders were committed in Indiana. There was extensive news coverage in the county where the crimes occurred and in an adjoining county during the 6 or 7 months preceding trial. The stories described the defendant's criminal history, his confession to the murders and other crimes, his police lineup identification, the fact that he had taken a lie detector test, and his plea offer, as well as references to him as the "'confessed slayer of six,' a parole violator and a fraudulent-check artist," and characterizing him as remorseless and without conscience. *Id*., 366 U.S. at 726. One newspaper account referred to "'a pattern of deep and bitter prejudice against [him]'" among the members of the community. *Id*., 366 U.S. at 727.

During voir dire examination, which lasted 4 weeks, news articles reported that "'impartial jurors are hard to find.'" *Id*. Of the 430-person panel, almost 90 percent entertained some opinion as to guilt—ranging in intensity from mere suspicion to absolute certainty—and a number admitted that if they were in the accused's place and he in theirs on the jury with their opinions, they would not want him on a jury. Of the 12 jurors who were selected, 8 thought he was guilty. Thus, the U.S. Supreme Court ultimately determined that based on the barrage of pretrial publicity and the pattern of deep and bitter prejudice shown to be present throughout the community, jury prejudice should be presumed and a change in venue was warranted.

In the present case, there was no evidence that the pretrial publicity surrounding Pryce and this case was nearly as inflammatory or pervasive as that in *Irvin v. Dowd, supra*. The

articles received into evidence here refer to Pryce by name and explain the circumstances surrounding the charges she faced, but none of the articles contain additional information about Pryce personally, express opinions as to her guilt or innocence, or speak derogatorily of her.

[9] The fact that a number of potential jurors indicated having heard of the case prior to trial is not sufficient to support a change of venue. It is not required that the jurors be totally ignorant of the facts and issues involved. *Irvin v. Dowd, supra*. In these days of swift, widespread, and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. *Id*. This is particularly true in criminal cases. *Id*. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. *Id*. It is sufficient if the juror can lay aside his or her impression or opinion and render a verdict based on the evidence presented in court. *Id*.

Thus, in the instant case, although potential jurors may have heard factual information about the case prior to trial, the majority of them indicated that they could remain impartial, decide Pryce's guilt based solely on the evidence presented at trial, and understood that Pryce was presumed innocent until proven guilty. Of the jurors who were ultimately selected for the jury, only four indicated having generally seen media reports of the case, but they all stated that they had not formed an opinion as to Pryce's guilt and could remain impartial. Thus, there is no evidence of the pattern of deep and bitter prejudice shown to be present throughout the community as in *Irvin v. Dowd*, 366 U.S. 717, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961). We therefore conclude that the district court did not abuse its discretion in denying the motion to change venue.

Pryce also argues that a change of venue was warranted when considering the factors to be weighed in determining whether publicity has made it impossible to secure a fair and impartial jury. We disagree.

[10] Even if the evidence is insufficient to support a presumption of partiality under *Irvin v. Dowd, supra*, a change of venue may still be warranted where the defendant shows the existence of pervasive misleading pretrial publicity. See *State v. Rodriguez*, 272 Neb. 930, 726 N.W.2d 157 (2007). A court must evaluate several factors in determining whether the defendant has met the burden of showing that pretrial publicity has made it impossible to secure a fair trial and impartial jury. These factors include (1) the nature of the publicity, (2) the degree to which the publicity has circulated throughout the community, (3) the degree to which venue could be changed, (4) the length of time between the dissemination of the publicity complained of and the date of the trial, (5) the care exercised and ease encountered in the selection of the jury, (6) the number of challenges exercised during voir dire, (7) the severity of the offenses charged, and (8) the size of the area from which the venire was drawn. *Id*.

We have already addressed the first four factors. The pretrial publicity consisted of five articles—only three of which were published shortly before trial commenced—which contained only factual information about the case, and the publicity was not inflammatory or pervasive. And there was no evidence establishing the degree to which the articles circulated throughout Custer County. These factors do not support a change in venue.

Of the remaining four factors, a review of the jury selection process shows that there was no difficulty in selecting a jury. Great care was taken during the process. At the outset, we note that the sheer time which voir dire took to complete, approximately 2 days, does not in and of itself warrant a change of venue. See *State v. Ell*, 196 Neb. 800, 246 N.W.2d 594 (1976). At least 80 potential jurors were summoned, 42

were initially called, and as a panel, they were questioned about their exposure to pretrial publicity. The parties agreed that any potential juror who indicated having heard or read media reports of the case would be questioned separately. Ultimately, 25 potential jurors were personally interviewed. The parties also challenged a number of jurors during voir dire and 16 were stricken for cause. However, of the potential jurors who were challenged and excused, not all of them were dismissed due to exposure to pretrial publicity. Rather, they were excused for reasons such as health issues; financial hardship; or knowing or being related to Pryce, her husband, or a witness.

Four of the jurors ultimately selected for the jury indicated that despite having heard of the case via the media, they had not formed an opinion as to Pryce's guilt and could be fair and impartial. We reiterate that the law does not require that a juror be totally ignorant of the facts and issues involved; it is sufficient if the juror can lay aside his or her impression or opinions and render a verdict based upon the evidence. See *State v. Erickson*, 281 Neb. 31, 793 N.W.2d 155 (2011). For the sake of completeness with respect to the final two factors, we note that intentional child abuse resulting in death is a Class IB felony and agree with the parties that it is a significant charge. See Neb. Rev. Stat. § 28-707 (Reissue 2016). In addition, we observe that there is no evidence in the record establishing the size of Custer County—the area from which the venire was drawn. When considering the foregoing factors, we cannot conclude that the district court abused its discretion in denying Pryce's motion to change venue.

## CONCLUSION

Finding no abuse of discretion in the denial of Pryce's motion to change venue, we affirm.

Affirmed.