STATE OF NEBRASKA, APPELLEE, v. GERALD JOSEPH FALLIS, APPELLANT.

288 N. W. 2d 281

Filed February 5, 1980. No. 42749.

Tim Sindelar of Sindelar & Gooch, for appellant.

Paul L. Douglas, Attorney General, and Marilyn B. Hutchinson, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

The defendant, Gerald Joseph Fallis, was charged

in a multicount information of committing the offenses of (1) first degree sexual assault under section 28-408.03, R. R. S. 1943; (2) burglary under section 28-532, R. R. S. 1943; and (3) being a habitual criminal under section 29-2221, R. R. S. 1943. He was convicted of the first two offenses after a trial to the jury, and was sentenced to serve a term of 8 to 25 years on the first degree sexual assault conviction, and to a term of 1 to 10 years on the burglary conviction, the sentences to run concurrently. He has appealed those convictions to this court. We affirm.

The victim, an 83-year-old retired school teacher, was sexually assaulted in her home in Valentine, Nebraska, during the evening hours of September 16, 1978. Due to her physical condition and the nature of the attack, she was unable to identify her assailant. Defendant, an American Indian, enrolled in the Rosebud Sioux Tribe and residing in Mission, South Dakota, was arrested later that evening upon information obtained by the police following an investigation of the incident. Counsel was appointed by the court to represent the defendant; and upon his arraignment on counts I and II of the information, the defendant entered pleas of not guilty to those charges. The charge of being a habitual criminal was later dismissed by the court and will not again be referred to in this opinion.

Trial was originally set by the court for January 8, 1979; however, because of various motions filed by the defendant, and two continuances granted by the court on its own motion, the trial was reset for February 12, 1979. Following the second continuance, and prior to trial, both the defendant and his court-appointed counsel filed separate motions to disqualify defendant's attorney from representing the defendant in the action. The basis for the motion of defendant's attorney was that his client had failed to cooperate with him in the preparation of the case

and had not confided in him or given him the names of prospective witnesses, and had indicated that he preferred to have an attorney more closely associated with the American Indian movement. In support of his separate motion, the defendant alleged that he was unable to confide in his court-appointed attorney and felt that there was a conspiracy between the prosecuting attorney and his court-appointed attorney, and that he would be unable to obtain fair representation in the trial. Both motions were overruled by the court, and the trial commenced the same day.

There was little, if any, conflict in the evidence adduced at the trial, with the exception of the evidence in support of the defendant's alibi defense, his claim being that he was in Kilgore, Nebraska, during the entire evening on which the alleged assault had been committed. The State presented evidence which, if believed by the jury, placed the defendant at the scene of the crime in Valentine, Nebraska, at the time the crime was committed. There was also evidence indicating that the defendant was the assailant of the victim at that time.

Based on the evidence presented at that trial, the jury returned a verdict of guilty on both counts, and the defendant was sentenced as above indicated.

In his appeal to this court, the defendant assigns four errors which he claims constitute reversible error. Defendant's first and principal contention is that the trial court erred in denying his motion for a change of venue. In his motion, defendant contended that a change of venue was necessary in order to receive a fair trial for the reason that there was extensive pretrial publicity, and more importantly, that the jury panel included no American Indians. In support of his motion, defendant presented three affidavits, almost identical in form, and containing conclusional statements without supporting facts, to the effect that an American Indian was

unable to receive a fair trial in Cherry County, Nebraska. He also produced evidence with regard to the alleged absence of American Indians on the jury panel. The rule is well established that a motion for a change of venue in a criminal action is addressed to the sound discretion of the trial court, and its ruling will not be disturbed unless a clear abuse of discretion is shown. State v. Irwin, 191 Neb. 169, 214 N. W. 2d 595 (1974); State v. Goham, 187 Neb. 34, 187 N. W. 2d 305 (1971); Sundahl v. State, 154 Neb. 550, 48 N. W. 2d 689 (1951); State v. Ell, 196 Neb. 800, 246 N. W. 2d 594 (1976). In connection with the issue of extensive pretrial publicity as justifying a change of venue, this court stated in State v. Ell, *supra*: "A survey of cases throughout the United States shows that among the relevant factors considered in determining whether a change of venue should be granted due to pretrial publicity are the nature of the publicity; the degree to which the publicity has circulated throughout the community; the degree to which the publicity circulated in areas to which venue could be changed; the length of time between the dissemination of the publicity complained of and the date of trial; the care exercised and ease encountered in selection of the jury; the number of challenges exercised during the voir dire; the severity of the offense charged; and the size of the area from which the venire is drawn." We note, however, that the defendant did not introduce any evidence whatsoever as to what the purported extensive pretrial publicity consisted of. In the absence of such evidence, we are reluctant to express an opinion on the prejudicial nature of this publicity, if any.

However, the proceedings of the voir dire of the jury at the trial are available and revealing on this issue. It is interesting to note that of the 38 talesmen in the venire, only 11 were dismissed for cause. None of the persons dismissed for cause were dis-

missed because of exposure to pretrial publicity. In reviewing the record, we are unable to find anything which would indicate that the purported pretrial publicity was so extensive or of such a nature as to make it impossible for the defendant to secure a fair trial in Cherry County, Nebraska.

Defendant also contested the manner used in the selection of the jury panel in his motion for change of venue. Specifically, he contended that the jury panel contained no American Indians and was therefore not a jury of defendant's "peers." We comment, in passing, that in this country the word "peers" is generally held to mean "citizens," and nothing more. 70 C. J. S., Peers, p. 385; Black's Law Dictionary (5th Ed., 1969), p. 1019. However, we believe defendant is in effect contesting the method of the selection and composition of his jury. In State v. Martinez, 198 Neb. 347, 252 N. W. 2d 630 (1977), this court stated: "A prima facie case of discrimination in jury selection can be established upon demonstration that a significant disparity exists between the percentage of a particular minority chosen for jury duty and the percentage of that minority available in the population from which the jurors are drawn. See Gibson v. Blair, 467 F. 2d 842 (5th Cir., 1972). For example, in Norris v. Alabama, 294 U. S. 587, 55 S. Ct. 579, 79 L. Ed. 1074 (1935), proof that a substantial segment of the population was of negroid descent, coupled with proof that no black American, although several were qualified, was ever called for jury service over an extended period of time, was held to constitute a prima facie case of systematic exclusion of a distinct minority from jury service."

As previously stated, defendant's evidence with reference to discrimination in jury selection consisted of the affidavits of three persons alleging, in conclusional form, that it was impossible for an American Indian to receive a fair and impartial jury

in Cherry County, Nebraska. The defendant testified at the hearing on the motion for change of venue and stated that upon examining the jury panel list, he did not know of any member of the American Indian race that was included in that list. The clerk of the District Court for Cherry County also testified at the hearing that he did not know of any jurors, personally, who were members of the American Indian race; but indicated that some on the list might have been American Indians as he did not personally know all the persons on the list, and that it was not possible to determine that fact from the names alone. This is obviously true, as even the defendant's name, Fallis, does not indicate American Indian heritage. The record reveals that in overruling defendant's motion for a change of venue, the court stated as follows: "Of course, our juries are, by the state law, drawn from the poll list, and that is where this jury was drawn from. This Court selected the key number and certified the key number from the poll list, and this jury was drawn by the clerk in due fashion, and be there persons of Indian nationality that voted, they would have, possibly, been drawn if the key number for their registration had been drawn by this Court by lot, and I can see that there is no — if there be persons of Indian nationality, our laws do not discriminate against their being called for jury duty, the same as anyone else. Your general evidence for a change of venue, even to another county, must be deemed by this Court to be insufficient for a change of venue. I realize that you draw on the additional argument that there are probably no Indian persons or persons of Indian Nationality on the jury list. * * * there is no guarantee that your own nationality will be on that jury, even under the United States Constitution. As long as your general statutory provisions for the selection of that jury does not, by some means, prohibit their general selection, then the selection of the jury is

deemed to meet the statutory — I mean the constitutional requirements, so the motion for change of venue is overruled and denied." We agree. In State v. Martinez, *supra*, we stated: "This court has previously approved of the statutory method of jury selection from voter registration lists. See State v. Gutierrez, 187 Neb. 383, 191 N. W. 2d 164 (1971). As shown by that opinion, Nebraska's jury selection process is racially neutral. Because members of minorities are not identified, Nebraska's jury selection process does not encounter the problems as did the jury selection process in Avery v. Georgia, 345 U. S. 559, 73 S. Ct. 891, 97 L. Ed. 1244 (1953), where Negroes were identified by colored cards; or in Whitus v. Georgia, 385 U. S. 545, 87 S. Ct. 643, 17 L. Ed. 2d 599 (1967), where the letter '(c)' was placed after the names of Negroes. While some Indians may be easily identifiable by their surnames, many have names which are not obviously Indian. That fact fails to separate Indians from other ethnic groups."

The most that can be said of defendant's evidence is that neither the defendant nor the clerk of the District Court personally knew of the existence of American Indians on the jury panel. The fact is that on voir dire examination of the jury it was determined that one of the jurors was of American Indian heritage. We think it is clear the defendant failed to establish discrimination in the jury selection and the ruling of the trial court was not a clear abuse of discretion. There is no merit in defendant's assignment.

Defendant's second assignment of error relates to the trial court's failure to disqualify defendant's court-appointed counsel. The law of this state is well settled that the right of an indigent defendant to have counsel does not give him the right to be represented by counsel of his own choosing and that *mere distrust of,* or dissatisfaction with, appointed counsel

is not enough to secure the appointment of substitute counsel. See, State v. Blunt, 197 Neb. 82, 246 N. W. 2d 727 (1976); State v. Bratton, 187 Neb. 460, 191 N. W. 2d 612 (1971). The record discloses that defendant, through a letter written on February 6, 1979, a date subsequent to the originally scheduled date of the trial, made a request for the dismissal of his court-appointed counsel. At the hearing on this request, the defendant stated: "[U]p to date, I have not really confide [sic] in [my defense attorney], and to tell him the whole defense yet. I don't have that much confidence in him, and I feel like that he just couldn't truly, adequately give me a decent defense in this trial coming up." The court-appointed counsel amplified this feeling in testifying on his own motion to withdraw, when he stated: "[S]ince the date of [defendant's] arrest, he has indicated a desire to be represented by somebody who has been identified with the Indian Movement. He has indicated that he was suspicious of my ability to represent him." Clearly a lack of trust by defendant in his court-appointed counsel was present. However, a defendant cannot base a claim of inadequate representation of counsel upon his refusal to cooperate with appointed counsel. See, Shaw v. United States, 403 F. 2d 528 (8th Cir., 1968); United States ex rel. Curtis v. People of St. of Illinois, 521 F. 2d 717 (7th Cir., 1975), cert. denied, 423 U. S. 1023, 96 S. Ct. 465, 46 L. Ed. 2d 397 (1975). A review of the entire record convinces us defense counsel ably represented defendant throughout these proceedings. Failure to inform the court of his distrust in counsel until only a week before trial, when defendant had at least 6 weeks to do so, leads inescapably to the conclusion that defendant only demonstrated he did not have complete confidence in his court-appointed counsel. Such lack of confidence does not, of itself, establish grounds for securing new counsel. Further, defendant's failure to confide in his court-appointed coun-

sel does not set forth a claim of inadequate representation of counsel. It is interesting to note that trial in this matter had been rescheduled on two separate occasions. Defendant was fully aware that any counsel whom he retained would be required to adjust to the trial court's schedule. While defendant might have made attempts to retain other counsel, he made no showing that any counsel he had contacted was able to conform to the court's schedule. Such absence of proof that other counsel was available does not aid defendant in this regard either. While the actions of counsel in informing the trial court of his position were commendable, the trial court was correct, we believe, in denying the motions. We therefore reject this claim of defendant.

The third assignment of error relates to the refusal of the trial court to instruct the jury on the lesser-included offenses of second degree sexual assault and battery. " 'The test which must be applied in determining whether or not to submit a lesser-included offense is whether there is evidence which produces a rational basis for a verdict acquitting defendant of the offense charged and convicting him of the lesser offense.' " State v. Tamburano, 201 Neb. 703, 271 N. W. 2d 472 (1978). Defendant contends there was evidence which would provide a rational basis for finding that defendant did not commit a first degree sexual assault or battery. Specifically, defendant contends the element of "penetration" was placed in dispute. We do not agree with this analysis. The only evidence with reference to this element came from the examining doctor. He testified that while it was impossible to determine the depth of the penetration, it was possible for the victim to sustain the injury only through natural penetration. We do not believe the evidence can be viewed as not establishing penetration. In fact, defendant claims that the absence of the victim's blood on defendant's body places the element of penetra-

tion *by defendant* in issue. Again defendant's position is without merit. The statute involved provides: "(1) A person shall be guilty of sexual assault in the first degree when such person subjects another person to sexual penetration * * *." § 28-408.03, R. R. S. 1943. Sexual penetration is defined among other things as "any intrusion, *however slight,* of any part of the actor's body *or any object manipulated* by the actor into the genital or anal openings of the victim's body." (Emphasis supplied.) § 28-408.02 (5), R. R. S. 1943.

The evidence presented does not establish a rational basis for one to conclude that the defendant did not sexually assault or penetrate the victim. The record reveals that defendant was observed asking for and receiving directions to the victim's residence. A person of defendant's build, wearing clothes similar to those worn by the defendant when arrested, having a distinctive cough similar to defendant's, and driving a vehicle of the same make, color, and license plate number of the vehicle defendant was driving at the time of his arrest, was seen leaving the scene of the crime. The physician who examined the victim following the assault testified that the injuries sustained by her could only result from a natural penetration. Finally, blood was found on the clothing worn by the defendant at the time of his arrest, which was of a type and grouping corresponding to that of the victim, and different from that of the defendant. From the foregoing, it cannot be said that the defendant's requested instruction regarding lesser-included offenses was required; and we likewise reject this contention of the defendant.

Finally, defendant contends that the evidence presented was insufficient to support the verdict of the jury. In State v. Allen, 198 Neb. 755, 255 N. W. 2d 278 (1977), we stated: "In determining the sufficiency of the evidence to sustain a conviction, it is not the

province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence. * * *

"In a criminal action, this court will not interfere with a verdict of guilty based on conflicting evidence unless, as a matter of law, the evidence is so lacking in probative force that it is insufficient to support the finding of guilt beyond a reasonable doubt. * * * A guilty verdict of the fact finder in a criminal case must be sustained if there is substantial evidence, taking the view most favorable to the State, to support it."

In this case the only evidence which could create an inference that defendant was innocent was the testimony of defendant's three alibi witnesses. The jury, as the finder of fact, obviously did not believe the testimony of these witnesses as to defendant's whereabouts on the evening in question. Even the testimony of these witnesses as to defendant's whereabouts on that evening was conflicting. Taking the evidence in the light most favorable to the State, we conclude that such evidence was sufficient to support the verdict, and therefore also reject defendant's claim in this regard.

We therefore conclude that the judgment and verdict of the lower court was correct and must be affirmed.

AFFIRMED.