**Stanley M. TUCKER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 87–931.**

District of Columbia Court of Appeals.

Submitted Oct. 24, 1989.

Decided March 14, 1990.

Dennis M. Hart, Washington, D.C., appointed by this court, was on the brief for appellant.

---

Virginia C. Veltrop, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty. at the time the brief was filed, and Mona Mack, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, TERRY, Associate Judge, and REILLY, Senior Judge.

REILLY, Senior Judge:

Before us is an appeal from a conviction by a jury of the offense of distribution of cocaine. D.C.Code § 33–541(a)(1) (1988 Repl.). In urging reversal, appellant assigns four different rulings of the trial court as error. In our opinion, only one of these contentions raises a substantial issue, *viz.*, the denial of a motion for continuance grounded upon the unavailability of an important defense witness on the scheduled day of the trial. As the record reveals that this witness—unavailable only because he invoked his Fifth Amendment right against self-incrimination—could have been compelled to testify had a two-week continuance been granted, we have concluded that the conviction should be set aside and a new trial ordered.

The record shows that appellant and Robert Foster were jointly charged with narcotics distribution in an indictment returned on February 4, 1987, as a result of a street sale of a packet of cocaine to an undercover officer one evening during the previous month. There was testimony that Foster approached an unmarked police car parked on 15th Place, Southeast, and quoted a price of $50 for a specified quantity of cocaine. One officer stepped out of the car and handed him money in pre-recorded currency. Foster beckoned to a man standing nearby (later identified as appellant Tucker), who then delivered a bag containing white powder to the officer. The latter returned to the police car, used its radio transmitter to broadcast a description of the two men who had engaged in the transaction and drove away. Thus alerted, six officers in two different cars parked in the general vicinity descended on the scene a few minutes later. One of them grabbed appellant; another detained Foster. After the purchasing officer had driven by and signalled to the arresting officers that the men being held were indeed the subjects of the broadcast, both individuals were searched. The marked currency was discovered in Foster's pocket, but a search of Tucker's clothing yielded neither drugs nor any incriminating amount of money.

Because of inability to post bond, both codefendants were jailed while awaiting trial—Foster at Lorton, Tucker in D.C. Jail. Foster pleaded guilty the following month. To insure that the plea was knowing and voluntary, Foster, when brought before the trial judge, was asked whether he admitted participating in the transaction for which he was accused.[1] Foster admitted the government's proffer, but declined to name his accomplice, stating only that he was "with some people out there." This left Tucker to stand trial alone. His trial was scheduled for April 28, 1987, but was rescheduled for June 18, 1987, after the government had obtained a continuance.[2]

When the case was called and the government stated it was ready for trial, defense counsel asked the court first to set aside a "separation order" and permit his client to talk to Foster (who had been transported from Lorton to the courthouse) about testifying in his behalf. The government objected on the ground that counsel had already told her that Foster would testify and "take the beef for the crime." After some colloquy, in which the government informed the court that Foster would not be sentenced until July 1, defense counsel was directed to talk to a Mr. Ringe, Foster's lawyer, who was then in another courtroom. Following a brief recess, defense counsel stated he had found Ringe, who had told him that he could interview

---

1. *See* Super.Ct.Crim.R. 11(d).

2. On June 1, 1987, defense counsel filed a speedy trial motion. Such motion plainly had nothing to do with the scheduling of the trial, for the date of June 18th must have been announced before May 7th, as the codefendant Foster was aware of this when he moved for continuance of his own sentencing.

Foster but only if he were present. The court ruled that this was a reasonable condition, as the codefendant had a right to counsel.

Anticipating the likelihood of Tucker's invoking self-incrimination in this setting, the defense then moved for a continuance of trial. This motion was denied. The trial judge remarked that defense counsel should have talked to Ringe earlier, and that because the defense had previously moved for speedy trial, he would try the case immediately. At that time, the process of jury selection had not begun. A luncheon recess was called. When court reconvened, defense counsel informed the judge that Foster had told him that if called, he would take the "Fifth." When the judge then suggested that in this state of affairs it would be an exercise of futility to place Foster on the stand, counsel agreed, the veniremen were summoned, and a jury impaneled.[3]

At trial, appellant relied on the defense of mistaken identity. After bringing out on cross-examination of the identifying officer (the one to whom the cocaine packet was delivered) that the broadcast description of the culprit was not altogether accurate, appellant testified that on the evening of the arrest, he had been driven to the scene by a woman friend[4] because he had only a few cents on him and proposed to borrow some money from Foster, an old acquaintance, to tide him over till payday. After the car was parked, he discovered Foster standing in the middle of the block and solicited a loan. Foster went back to his house, but when he returned five minutes later, police officers suddenly swept the block and arrested both men. This enabled defense counsel in closing argument to hypothesize that the sale had already occurred before Tucker arrived on the scene, that he was detained simply because he was on the block, and that in driving by to identify him, the first officer, in the darkness, confused appellant with another man who had actually been Foster's accomplice. The jury, however, disbelieved him and returned a guilty verdict.

█ On appeal, Tucker argues that if the trial had been postponed to a date when Foster could no longer validly invoke his privilege against self-incrimination, his testimony would have corroborated the version of events put forth by Tucker on the witness stand. When the motion was made, Foster was still protected by this privilege because he had not been sentenced. *Jones v. United States*, 386 A.2d 308, 315 (D.C.1978), *cert. denied*, 444 U.S. 925, 100 S.Ct. 263, 62 L.Ed.2d 181 (1979). But once sentence had been pronounced, the reluctant witness being no longer faced with any danger of further prosecution or a heavier sentence for the transaction he was called upon to elucidate, would lose his Fifth Amendment right. Annotation, *Plea of Guilty or Conviction as Resulting in Loss of Privilege Against Self–Incrimination as to Crime in Question*, 9 A.L.R.3d 990 (1966, 1989 Supp.). Hence, appellant contends that the denial of a continuance when it became apparent that Tucker would refuse to testify was fatally prejudicial to the defense, because he was denied his Sixth Amendment right to compulsory process.

█ While the question is a close one, in our opinion the denial of the continuance in these circumstances did amount to reversible error. What the conscientious trial judge had overlooked when he insisted that the trial proceed without further delay, was that the express reason given by Foster when he requested and obtained a con-

---

**3.** Appellant's objection to the failure of the trial court to examine Foster in the courtroom in conformity with *Jaggers v. United States*, 482 A.2d 786, 793 (D.C.1984), is groundless as his trial counsel acquiesced in dispensing with this procedure. *See Deneal v. United States*, 551 A.2d 1312, 1314–15 (D.C.1988).

**4.** When the trial opened, this woman, who had been subpoenaed to testify for the defense, ap-

peared in court, but was missing the next day when counsel attempted to call her to the stand. The court then denied a motion for continuance, on the ground that the subpoena had not specified that she was obligated to appear on that particular day. In view of our disposition of this case, we need not pass upon the appeal from this ruling.

tinuance of sentencing until July 1, was that he preferred not to be sentenced until after Tucker's trial was over.[5] The government apparently did not oppose this request, which was granted on May 7 of that year. There is nothing in the record certified to us which indicates that either Tucker or his counsel were given any notice of this motion until it was granted. As the reluctant witness thereby succeeded in avoiding the dilemma—a hazardous one for a drug dealer—of either being forced to reveal the name of his accomplice or facing contempt of court charges, it was a foregone conclusion by the time appellant's counsel tried to induce him to waive his privilege, that he would refuse. Thus, even though the trial court might have been justified in thinking that defense counsel could have been more diligent before trial in attempting to insure Foster's availability as a witness, it appears that no amount of pretrial preparation could have accomplished this if the trial went ahead as scheduled.

We are keenly aware of the tremendous burden judges of the Superior Court face in attempting to keep abreast of an overcrowded criminal calendar. Hence, we have repeatedly held that the grant or denial of a continuance is a matter resting in the sound discretion of a trial judge which should rarely be reversed. E.g., Adams v. United States, 502 A.2d 1011, 1025–26 (D.C.1986); Brown v. United States, 244 A.2d 487, 489–90 (D.C.1968). But as the Supreme Court has pointed out, there are circumstances in which "insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). In considering the kind of situations where requests for continuance must be deemed compelling, we found a recent opinion of the Connecticut Supreme Court, State v. Williams, 200 Conn. 310, 511 A.2d 1000 (1986), a helpful guideline. There the court was faced with an issue almost identical to the one presented us, viz., the denial of a

continuance after a codefendant who had pleaded guilty and had previously told the police he had no accomplice, invoked his privilege against self-incrimination when called to the stand because he was awaiting sentence. In sustaining the trial judge's ruling that the witness was entitled to claim the privilege, the appellate court, however, then went on to hold:

> The continuance requested here was not unreasonable. . . . It would have given the defendant the opportunity to confront [his codefendant] after he had been sentenced, at a time when [the codefendant] could no longer have validly invoked his federal constitutional fifth amendment privilege against self-incrimination as to those crimes for which he was sentenced. . . . The prejudice to the defendant was substantial. The denial of the continuance constituted an abuse of discretion and the case is remanded for a new trial.

Id. at 1005–06 (citations omitted).

Urging us to defer to the trial court, however, the government, citing Brown, supra, 244 A.2d at 489–90, and United States v. Ford, 276 U.S. App. D.C. 315, 870 F.2d 729 (1989), argues that the denial of a continuance here was proper because the defense had failed to proffer the precise testimony it expected to elicit from codefendant Foster. This argument ignores the fact that the prosecutor in a bench colloquy had informed the court that the defense had learned that if Foster had testified he would exonerate Tucker. As the defense counsel was barred from conferring with Foster, except in the presence of the latter's lawyer, he was obviously in no position to represent to the court just what Foster would say on the witness stand. Only the latter's testimony, compelled after removal of his Fifth Amendment rights, holds the answer to the riddle.

*Reversed and remanded for new trial.*

---

**5.** With commendable candor, the government attached to its brief an appendix, consisting of an extract from the Foster record, bearing the cryptic entry "Defense requests continuance till after Co–D's case has been tried on 6/18/87. [Co–D Tucker # 233–87]."