STATE OF NEBRASKA, APPELLEE, V. PHILLIP E. BOWEN, APPELLANT.
505 N.W.2d 682

Filed September 17, 1993. · No. S-92-1121.

Phillip E. Bowen, pro se.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

In the appellant convict Phillip E. Bowen's first appearance in this court, *State v. Bowen*, 232 Neb. 725, 442 N.W.2d 209 (1989) (*Bowen I*), we ruled that his claims that his confession and certain physical evidence should have been suppressed and that the evidence failed to support his convictions for first degree murder and the use of a firearm to commit a felony were

without merit. We thus affirmed the district court's adjudication of guilt on those charges. The convict responded by filing the subject motion for postconviction relief, pursuant to the provisions of Neb. Rev. Stat. § 29-3001 et seq. (Reissue 1989 & Cum. Supp. 1992). The postconviction court dismissed the motion without appointing counsel and without granting a hearing on the merits. The convict has appealed, asserting, in summary, that the postconviction court erred in failing to (1) find that the trial court erred in not changing venue, (2) find that the trial court erred in failing to inform him of the nature of the accusation against him, (3) place a proper burden of proof upon him, (4) make specific findings of fact and conclusions of law, (5) forward a complete record, and (6) find that he was denied the effective assistance of trial and appellate counsel. We affirm.

## II. ANALYSIS

With that brief background, we turn our attention to the summarized assignments of error, adding such additional facts as are relevant to the resolution of each such assignment.

### 1. VENUE

The dispositive answer to the complaint made in the first summarized assignment of error, that the postconviction court failed to find that the trial court erred in not changing venue, is that under the law of this state, a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *State v. Stewart*, 242 Neb. 712, 496 N.W.2d 524 (1993). Accord, *State v. Nielsen*, 243 Neb. 202, 498 N.W.2d 527 (1993); *State v. Wickline*, 241 Neb. 488, 488 N.W.2d 581 (1992) (denying appellate review on a motion for postconviction relief on claimed denial of Fifth Amendment right of confrontation, which should actually have been categorized Sixth Amendment right of confrontation); *State v. Lyman*, 241 Neb. 911, 492 N.W.2d 16 (1992); *State v. Otey*, 236 Neb. 915, 464 N.W.2d 352 (1991), *cert. denied* 501 U.S. 1201, 111 S. Ct. 2279, 115 L. Ed. 2d 965; *State v. Hurlburt*, 221 Neb. 364, 377 N.W.2d 108 (1985) (denying appellate review of a motion for postconviction relief for error, including, inter alia, refusal to grant a change of venue).

Nonetheless, in the interest of completeness, we note that the convict filed a pretrial motion for change of venue due to extensive media publicity which he alleged precluded a fair and impartial trial in Douglas County. In particular, he asserted that media references tying him to the two coperpetrators, coupled with the media reports of one coperpetrator's plea of guilty, "compounded the prejudice and pre-conceived Guilt feeling of the community . . . ."

The motion was accompanied by the affidavit of a local practicing attorney who did not represent the convict, stating that in the attorney's opinion the convict would be unable to receive a fair and impartial trial in Douglas County due to prejudicial pretrial publicity.

At a hearing on the venue motion, the convict offered copies of 15 articles which appeared in a newspaper, and a videotape of three television news stories covering the robbery and murder of the victim. The trial court denied the motion, noting that any potential jurors who had made up their minds and could not be impartial would be excused for cause.

In *State v. Phelps*, 241 Neb. 707, 726-28, 490 N.W.2d 676, 690-91 (1992), we wrote:

> Section 29-1301 permits a change of venue when it appears that "a fair and impartial trial cannot be had" in the county where the offense was committed. A motion for change of venue is addressed to the discretion of the trial judge, whose ruling will not be disturbed absent an abuse thereof. [Citations omitted.]
>
> . . . .
>
> . . . [M]ere jury exposure to news accounts of a crime does not presumptively deprive a criminal defendant of due process. Rather, to warrant a change of venue, a defendant must show the "existence of pervasive misleading pretrial publicity." *State v. Bradley*, 236 Neb. 371, 386, 461 N.W.2d 524, 536 (1990), *cert. denied* ____ U.S. ____, 112 S. Ct. 143, 116 L. Ed. 2d 109 (1991). Indeed, in order for a defendant to successfully move for a change of venue based on pretrial publicity, he or she must show that the "publicity has made it impossible to secure a fair and impartial jury." *State v. Jacobs*, 226 Neb. at 190,

410 N.W.2d at 473. Accord *State v. Heathman*, 224 Neb. 19, 395 N.W.2d 538 (1986). A number of factors must be evaluated in determining whether that burden has been met, including the nature of the publicity, the degree to which the publicity has circulated throughout the community, the degree to which the publicity circulated in areas to which venue could be changed, the length of time between the dissemination of the publicity complained of and the date of trial, the care exercised and ease encountered in the selection of the jury, the number of challenges exercised during the voir dire, the severity of the offenses charged, and the size of the area from which the venire was drawn. *State v. Williams*, [239 Neb. 985, 480 N.W.2d 390 (1992)]; *State v. Red Kettle*, 239 Neb. 317, 476 N.W.2d 220 (1991); *State v. Jacobs, supra*; *State v. Bird Head*, [225 Neb. 822, 408 N.W.2d 309 (1987)]; *State v. Kern*, [224 Neb. 177, 397 N.W.2d 23 (1986)]; *State v. Heathman, supra*; *State v. Fallis*, 205 Neb. 465, 288 N.W.2d 281 (1980); *State v. Ell*, 196 Neb. 800, 246 N.W.2d 594 (1976).

As noted in *State v. Bradley, supra*, voir dire examination provides the best opportunity to determine whether venue should be changed. A jury was able to be selected in this case in approximately 4 hours. At the conclusion of that process, each of the venirepersons seated as a juror raised his or her hand in response to Phelps' inquiry as to whether each felt that he or she "could serve on this jury and fairly try this case free of influence of anything you have heard before this day and based exclusively on what comes from this chair and the exhibits that are received, free of any sense at all of any expectation by the community or your family or neighbors or anything else[.]"

See, also, *State v. Tucker*, 242 Neb. 336, 494 N.W.2d 572 (1993).

There is no allegation that the jury impaneled was unable to be fair and impartial. Thus, the trial court did not commit error in its denial of the change of venue request which would give rise to postconviction relief.

## 2. NATURE OF ACCUSATION

In the second summarized assignment of error, the convict complains that the lack of clarity in the information charging him with murder violated his Sixth Amendment right "to be informed of the nature and cause of the accusation."

As originally drawn, the information alleged that the convict killed the victim "purposely and with deliberate and premeditated malice, or during the perpetration of, or attempt to perpetrate a Robbery"; however, at some juncture, the words "purposely and with deliberate and premeditated malice, or" were stricken. The convict baldly asserts that the prosecutor struck those words during the course of *Bowen I*. He also argues that while the original information charged him with "first degree murder with pre-meditated malice," the State succeeded in proving only that he "conspired with [another] to rob or burglar the candy store" and that he was thus only an "accessory to a felony." Brief for appellant at 3.

Not only could these arguments have been litigated in *Bowen I*, and thus are not properly available for consideration at this time, but the State correctly points out that this summarized assignment is nothing more than an impermissible effort to relitigate the sufficiency of the evidence by in effect claiming the evidence proved only some lesser-included offense upon which the jury was not instructed.

However, again in the interest of completeness, we point out that Neb. Rev. Stat. § 28-303 (Reissue 1989) provides that one may commit first degree murder in a variety of ways, including by killing another "purposely and with deliberate and premeditated malice" or "in the perpetration of or attempt to perpetrate" a felony such as robbery. Thus, as originally drawn, the indictment charged first degree murder by virtue of killing either with the requisite mental state—purposeful murder—or while in the course of committing a felony. The evidence at trial proved the convict to be guilty of felony murder and not of purposeful murder, but no authority is cited that charges could not be levied in the alternative.

Indeed, in considering a statute which provided that one who, with the intent to rob or steal, " 'forcibly, and by violence, or by putting in fear, takes . . . money or personal property,' "

*Brown v. State*, 107 Neb. 120, 123, 185 N.W. 344, 345 (1921), this court wrote:

> This section of the statute does not define two separate felonies, but defines one only, which may be committed by two methods, namely, by force and violence, or by putting in fear. It is a general rule of criminal procedure that, when under a statute an offense may be committed by several methods, the indictment or information may charge that it was committed by any or all such methods as are not inconsistent with, or repugnant to, each other. The averments in the information are not repugnant, but are perfectly consistent with each other, and therefore are not improperly joined. The principle here announced finds support in 2 Wharton, Criminal Procedure (10th ed.) sec. 1221. In *State v. Montgomery*, 109 Mo. 645, the indictment charged, as in this case, that the crime was committed by taking from the prosecuting witness by force and violence, and by putting him in fear. A similar objection was made as is made in this case. It was held: "Where a crime may be committed by several methods, the indictment may charge that it was committed by all, provided they are not inconsistent with, or repugnant to, each other." Besides, section 9050, Rev. St. 1913, provides: "No indictment shall be deemed invalid, nor shall the trial, judgment or other proceedings be stayed, arrested or in any manner affected; * * * nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." Even if it be conceded that the information was bad for duplicity, there appears no basis to believe that such defects "tend to the prejudice of the substantial rights of the defendant upon the merits."

*Brown v. State*, 107 Neb. at 123-24, 185 N.W. at 345.

In any event, as noted in *State v. Laymon*, 239 Neb. 80, 474 N.W.2d 458 (1991), an information or complaint is sufficient unless it is so defective that by no construction can it be said to charge the offense of which the accused was convicted. Furthermore, where an information alleges the commission of a crime using language of the statute defining that crime or

terms equivalent to such statutory definition, the charge is sufficient. *State v. Spiegel*, 239 Neb. 233, 474 N.W.2d 873 (1991).

Although here the proof at trial supports felony murder and not purposeful murder, the charge of purposeful murder would not have been inconsistent with or repugnant to a charge of felony murder. Thus, we cannot say that the information was defective, no matter what condition it was in when the case was tried.

### 3. Burden of Proof

With regard to the third summarized assignment of error, the convict urges that in considering a pro se motion for postconviction relief, a court must "review the records and files of the case with the same courtesy and the same respect afforded a licensed attorney and the solemnity that a counsellor is required to posess [sic] in his pleadings."

He is correct; a pro se party is held to the same standards as one who is represented by counsel. See *State v. Shepard*, 239 Neb. 639, 477 N.W.2d 567 (1991). But the convict fails to show that the postconviction court held him to any different standard than a fully trained professional lawyer would have been required to meet, nor do we find in the record any instance in which the postconviction court assigned an improper burden of proof to the convict.

### 4. Lack of Findings and Conclusions

The convict also asserts that when denying a postconviction motion, the court initially ruling on the motion must make specific findings of fact and conclusions of law explaining its decision.

It is true that in *State v. Costanzo*, 235 Neb. 126, 454 N.W.2d 283 (1990), we ruled that having granted a hearing, the court was obligated to determine the issues and make findings of fact and conclusions of law. But more directly related to the convict's phrasing of the alleged error is our adjudication in *State v. Bostwick*, 233 Neb. 57, 443 N.W.2d 885 (1989). Therein, Bostwick argued error in denial of a hearing and also "the court's failure to delineate issues and make findings of fact and conclusions of law in its order denying Bostwick

postconviction relief." *Id.* at 64, 443 N.W.2d at 889-90. We ruled:

> [C]oncerning Bostwick's claim that the district court should have delineated issues and expressed findings of fact and conclusions of law underlying denial of postconviction relief, we note that the court succinctly stated the only finding of fact or conclusion of law necessary for disposition of Bostwick's case, namely, Bostwick's motion for postconviction relief is without merit.

*Id.* at 65, 443 N.W.2d at 890.

We have also held that an evidentiary hearing on a motion for postconviction relief is not required if the record and the files in the case affirmatively establish that the defendant is not entitled to relief. *State v. Lyman*, 241 Neb. 911, 492 N.W.2d 16 (1992). As stated in *State v. Victor*, 242 Neb. 306, 309, 494 N.W.2d 565, 569 (1993):

> "An evidentiary hearing on a postconviction motion is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution." . . .
>
> Conversely, an evidentiary hearing on a motion for postconviction relief may properly be denied when the records and files of the case affirmatively establish that the defendant is not entitled to relief. . . .

Our analysis of each of the convict's assignments of error establishes the convict's motion to be without merit and that the postconviction court appropriately denied relief without a hearing on the merits. As a result, the postconviction court was not obligated to make findings of fact or conclusions of law beyond the implicit finding in its denial of such hearing that the motion was without merit.

### 5. RECORD

Although in regard to this fifth summarized assignment of error the convict complains in his brief that the record before us is deficient in that it does not contain the opening statements made to the trial jury, the bill of exceptions reveals he had asked

the postconviction court to supplement the record by including in it not the opening statements, but the voir dire proceeding.

Although the postconviction court did not grant the convict a hearing on the merits of his postconviction motion, it did grant a hearing on his request that the record be supplemented. That hearing demonstrated that no one had asked that the voir dire be reported; thus, what transpired at that portion of the trial was not preserved.

As the postconviction court noted, the record cannot be supplemented with what does not exist. Just as obviously, having asked the postconviction court to supplement the record by including the voir dire, the convict cannot now complain that the record does not contain the opening statements to the jury. *Central Nebraska Public Power and Irrigation District v. Walston*, 140 Neb. 190, 299 N.W. 609 (1941) (question not presented by pleadings or evidence in trial will not be considered on appeal).

The convict has not claimed that anything which occurred at the voir dire in any way prejudiced him. As noted in *State v. Nearhood*, 233 Neb. 767, 448 N.W.2d 399 (1989), an omission from the bill of exceptions not shown to result in prejudice presents no error upon which relief can be granted.

## 6. Effectiveness of Counsel

In the final summarized assignment of error, the convict asserts that the postconviction court erred in failing to find he was not provided the effective assistance of counsel. He argues that both trial counsel and appellate counsel were ineffective, claiming that trial counsel should have pursued a change of venue with greater vigor and that appellate counsel should have raised as an issue in *Bowen I* trial counsel's failure to do so, as well as trial counsel's failure to seek a continuance in order that a coperpetrator could have been available to testify.

We begin our consideration of this summarized assignment of error by noting that trial counsel had been replaced by the time *Bowen I* was filed. Under that circumstance, the alleged ineffectiveness of trial counsel could have been raised in *Bowen I*; thus, we treat the convict's claim that trial counsel's performance was deficient in failing to properly pursue a

change of venue as a claim that appellate counsel was ineffective in failing to question trial counsel's performance with respect to that issue. See *State v. Nearhood, supra.*

We next recall that in order to state a claim of ineffective assistance of counsel as violative of the Sixth Amendment to the U.S. Constitution and thereby obtain reversal of a conviction, one must show that counsel's performance was deficient and such deficient performance prejudiced one's defense, that is, demonstrate a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Nielsen*, 243 Neb. 202, 498 N.W.2d 527 (1993); *State v. Victor*, 242 Neb. 306, 494 N.W.2d 565 (1993).

As the analysis in part II(1) above establishes that there was no trial error in the refusal to change venue, there can, of course, be no merit in the claim that appellate counsel should have asserted as error trial counsel's failure to have more vigorously pursued the matter.

Left for consideration, then, is the convict's assertion that a continuance of the trial should have been sought in order that the coperpetrator, Christopher Bazer, could have been compelled to testify that at no time did the convict have the murder weapon in his possession and, further, that the convict had attempted to stop the robbery.

Bazer had pled guilty to first degree murder prior to the convict's trial, but Bazer had not yet been sentenced. In considering various pretrial motions the convict had filed, the trial court ruled that Bazer could invoke his Fifth Amendment right and refuse to testify.

The trial court also noted that Bazer had not testified at his own trial, having pled guilty upon the impaneling of the jury. At that time, the following exchange took place between Bazer and the court:

> [Bazer]: I went down there, and I needed some money, and things got around, and a gun got pulled out. And . . .
> THE COURT: Who pulled the gun out?
> [Bazer]: I did. I pulled the gun out. And in doing that, the gun—I cocked it back, and she started running and I

grabbed her and tried pulling her back, and the gun went off.

At his trial, the convict attempted to question Bazer regarding the murder, but Bazer declined to respond, choosing instead to invoke his Fifth Amendment privilege against self-incrimination. The convict then put into evidence the foregoing exchange Bazer had had with the court when entering his plea.

Although the U.S. Supreme Court stated the principle in the context of a capital case, *Estelle v. Smith*, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981), courts in other types of cases have held that in order to prevent the possible enhancement of the sentence, one who has pled guilty but who is awaiting sentencing may invoke the privilege against self-incrimination. E.g., *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067 (6th Cir. 1990); *United States v. Zirpolo*, 704 F.2d 23 (1st Cir. 1983), *cert. denied* 464 U.S. 822, 104 S. Ct. 87, 78 L. Ed. 2d 96; *State v. Williams*, 200 Conn. 310, 511 A.2d 1000 (1986). There is also authority suggesting that under the circumstances here presented, the failure to grant a reasonable continuance to the convict would have constituted an abuse of discretion. See *Williams, supra* (while court could consider countervailing factors such as right to control docket and judicial economy, it was an abuse of discretion to deny continuance until after witness had been sentenced). Accord *Tucker v. U.S.*, 571 A.2d 797 (D.C. App. 1990).

Thus, for the purpose of our analysis, we assume that appellate counsel performed deficiently in not raising trial counsel's failure to seek a continuance as a ground for reversing the trial judgment. The question therefore becomes whether that deficient performance by appellate counsel prejudiced the convict.

The convict alleges the evidence shows that

Bazer was the only eye witness to the [convict's] behaviour during the crime in question and could have testified on the [convict's] behalf as to the renunciation made by the [convict] attempting to stop or thwart [Bazer's] behaviour and that the [convict] never had possesion [sic] of the gun of which [the convict] is now serving 1 to 6 years

consecutive to a life [sic] sentence.

But trial evidence reveals that as early as 2 weeks before the robbery took place, the convict attempted to involve one Mack Riggs in it. The trial testimony of another accomplice, Dale Demont, also strongly implicates the convict in the robbery. According to Demont, the convict announced en route to the scene of the crime that they were going to commit a robbery, and the convict directed Demont, who was driving, where to stop and wait. After the crime, the convict said that he had gotten some change from a cash register. Not only did another witness testify that the convict did not leave the scene until after the shooting, but the convict himself testified that he did not flee the robbery until just before the shooting. In order for abandonment

> [t]o be effective as a defense, there must be an appreciable interval between the alleged abandonment of the criminal enterprise and the act for which responsibility is sought to be avoided. The coconspirator must have a reasonable opportunity to follow the example and refrain from further action before the act in question is committed. A conspirator cannot escape responsibility for an act which is the natural result of a criminal scheme he has helped to devise and carry forward by running away at the instant when the act in question is about to be committed and the transaction which immediately begets it has actually been commenced. See, People v. Nichols, 230 N. Y. 221, 129 N. E. 883, Pollack v. State, 215 Wis. 200, 253 N. W. 560.

State v. Wilson, 192 Neb. 435, 437, 222 N.W.2d 128, 130 (1974).

In light of the strength of the other evidence implicating the convict in the crime, even if Bazer were to have testified, as the convict claims he would, we cannot say that there is a reasonable probability that the result of the trial would have been any different.

### III. JUDGMENT

The record failing to sustain any of the summarized assignments of error, the judgment of the postconviction court is affirmed.

AFFIRMED.