STATE OF NEBRASKA, APPELLEE, V. DARRIN MCHENRY,
APPELLANT.

525 N.W.2d 620

Filed January 6, 1995. No. S-93-1020.

Richard A. Birch, of Nielsen & Birch, and Patrick B. Hays for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

WHITE, J.

Following a jury trial, Darrin McHenry was found guilty of count I, aiding and abetting first degree murder; count II, aiding and abetting attempted robbery; and count III, first degree sexual assault. McHenry was sentenced to life imprisonment for count I, $6^2/3$ to 20 years' imprisonment for count II, and $16^2/3$ to 50 years' imprisonment for count III. McHenry was also ordered to serve 4 days of each year in solitary confinement. McHenry appeals his convictions and sentences.

Richard Sterkel was found dead near the American Legion Club in North Platte, Nebraska. An autopsy revealed that Sterkel died from strangulation and multiple injuries to the head, neck, and chest.

McHenry, Frank Ladig, Antonio Estrada, Nordel Moore, and others were living under the South Platte River Bridge and at an encampment near the American Legion Club. Sterkel was passing by the campsite behind the legion club when the group invited him to drink with them. Sterkel stayed with the group for a few days. During that time the group drank heavily, swam in the river, and played cards. On July 28, 1993, the day of Sterkel's death, the group was encamped under the bridge because it had started to rain. According to Ladig, after drinking under the bridge and playing cards, McHenry stood up and said, "Let's do it." McHenry, Ladig, and Estrada then began beating Sterkel. McHenry asked Sterkel to give up his wallet. Sterkel claimed his wallet was at the other campsite, so the parties took Sterkel back to the campsite near the legion club, hitting and kicking him along the way. The group searched the legion club campsite for Sterkel's wallet but could not find it. Ladig testified that he and Estrada left the area, and McHenry and Moore stayed on, beating and sexually assaulting Sterkel.

McHenry claims that the district court erred in six respects. McHenry alleges in his first assignment of error that the district court failed to properly instruct the jury on the burden of proof needed to convict McHenry. McHenry claims that the judge's instructions to the jury lowered the burden of proof by which the State must prove McHenry guilty of the crimes charged.

In an appeal of an action based on a claim of erroneous

instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Gatson*, 244 Neb. 231, 505 N.W.2d 696 (1993); *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991). The State must prove beyond a reasonable doubt every element of the charged offense. *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *Gatson, supra*; *State v. Garza*, 241 Neb. 934, 492 N.W.2d 32 (1992). "[W]hen a court improperly defines reasonable doubt in its jury instructions, due process is not achieved." *Garza*, 241 Neb. at 959, 492 N.W.2d at 49. See, *Cage v. Louisiana*, 498 U.S. 39, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990); *In re Winship, supra*.

> [T]he proper inquiry is not whether the instruction "could have" been applied in unconstitutional manner, but whether there is reasonable likelihood that the jury *did* so apply it. [Citation omitted.] The constitutional question . . . is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard.

*Victor v. Nebraska*, _____ U.S. _____, 114 S. Ct. 1239, 1243, 127 L. Ed. 2d 583 (1994). Thus, the question becomes whether there is a reasonable likelihood that the jury in McHenry's case misunderstood the reasonable doubt instruction given by the court so as to allow conviction based on insufficient proof. The district court read the following instruction before the trial began:

> A reasonable doubt is a doubt formed upon reason. It is not a fanciful doubt, a whimsical doubt or a capricious doubt. Proof beyond a reasonable doubt requires proof so compelling as to convince you of the truth of a fact to the extent that you would be willing to act upon such belief without reservation in an important matter in your own business or personal affairs. However, if you are not satisfied of the defendant's guilt to that extent, then reasonable doubt exists and the defendant must be found not guilty.

The court then stated:

> You have to read the instructions and decide whether the

presumption has been met. I think the instruction is clear.
It's a doubt that you would rely upon in your own personal
affairs. *It's something that would convince you in
something you do personally.* It's a heavy burden. These
are not light things to set aside. They are very important.
They're absolutely critical.

(Emphasis supplied.)

The judge's explanation of the reasonable doubt standard
raises the level of doubt a juror needs to find McHenry not
guilty, thereby lowering the State's burden to prove McHenry
guilty. A juror must have a reasonable doubt that the defendant
is guilty in order to acquit the defendant; the jury does not have
to be *convinced* that the defendant is not guilty in order to
acquit.

The trial court judge in McHenry's case explained the
reasonable doubt standard so that, in order to acquit McHenry,
a juror would have to be *convinced* of the fact that McHenry
was not guilty instead of having a reasonable doubt as to his
guilt. Thus, the judge lowered the standard by which the State
had to prove McHenry guilty of the crime with which he was
charged. "The Due Process Clause requires the government to
prove a criminal defendant's guilt beyond a reasonable doubt,
and trial courts must avoid defining reasonable doubt so as to
lead the jury to convict on a lesser showing than due process
requires." *Victor*, 114 S. Ct. at 1251. See *Gatson, supra*. That
is exactly what the trial court judge did in McHenry's case, and
thus there is a reasonable likelihood that the jury did indeed
convict on a lesser showing than due process requires. We note
that the actual jury instruction itself meets due process
requirements in that it adequately explains to the jury the level
of doubt needed to find McHenry not guilty. Indeed, we
approved of a very similar instruction in *Garza, supra*. It is the
judge's explanation of that jury instruction that raised the level
of doubt a juror must have before finding McHenry not guilty,
thereby lowering the State's burden of proof.

The "instructions given must be read together, and if, taken
as a whole, they correctly state the law, are not misleading, and
adequately cover issues supported by the pleadings and the
evidence, there is no prejudicial error necessitating a reversal."

*State v. Gatson*, 244 Neb. 231, 233, 505 N.W.2d 696, 698 (1993). Accord *State v. Williams*, 239 Neb. 985, 480 N.W.2d 390 (1992). We find that the reasonable doubt standard found in the instruction to the jury, as heightened by the trial court judge's comment, did not correctly state the law and is misleading. McHenry has met his burden and has shown that the judge's explanation of the jury instruction in question is prejudicial. Because there is a reasonable likelihood that the jury misunderstood the reasonable doubt instructions, we reverse the judgment and remand the cause for a new trial.

McHenry alleges in his second assignment of error that the district court erred in refusing to grant McHenry's motions for change of venue. McHenry argues he could not possibly receive a fair trial due to the pretrial publicity surrounding his case. The night before the trial, two television news reports disclosed that McHenry filed a motion in limine to restrict any reference to polygraph examinations. McHenry claims that the reference to polygraph examinations is inherently prejudicial and that thus he could not receive a fair trial.

Neb. Rev. Stat. § 29-1301 (Reissue 1989) permits a change of venue when the defendant cannot receive a fair and impartial trial in the county in which the offense was committed. " 'A motion for change of venue is addressed to the discretion of the trial judge, whose ruling will not be disturbed absent an abuse thereof. . . .' " *State v. Bowen*, 244 Neb. 204, 207, 505 N.W.2d 682, 686 (1993), quoting *State v. Phelps*, 241 Neb. 707, 490 N.W.2d 676 (1992). The law regarding change of venue due to pretrial publicity is well established. In *Bowen*, 244 Neb. at 207-08, 505 N.W.2d at 686, we quoted *Phelps*, stating:

"[M]ere jury exposure to news accounts of a crime does not presumptively deprive a criminal defendant of due process. Rather, to warrant a change of venue, a defendant must show the 'existence of pervasive misleading pretrial publicity.' *State v. Bradley*, 236 Neb. 371, 386, 461 N.W.2d 524, 536 (1990), *cert. denied* _____ U.S. _____, 112 S. Ct. 143, 116 L. Ed. 2d 109 (1991). Indeed, in order for a defendant to successfully move for a change of venue based on pretrial publicity, he or she must show that the 'publicity has made it impossible to secure a fair and

impartial jury.' *State v. Jacobs*, 226 Neb. at 190, 410 N.W.2d at 473. Accord *State v. Heathman*, 224 Neb. 19, 395 N.W.2d 538 (1986). A number of factors must be evaluated in determining whether that burden has been met, including the nature of the publicity, the degree to which the publicity has circulated throughout the community, the degree to which the publicity circulated in areas to which venue could be changed, the length of time between the dissemination of the publicity complained of and the date of trial, the care exercised and ease encountered in the selection of the jury, the number of challenges exercised during the voir dire, the severity of the offenses charged, and the size of the area from which the venire was drawn. *State v. Williams* [239 Neb. 985, 480 N.W.2d 390 (1992)]; *State v. Red Kettle*, 239 Neb. 317, 476 N.W.2d 220 (1991); *State v. Jacobs, supra*; *State v. Bird Head*, [225 Neb. 822, 408 N.W.2d 309 (1987)]; *State v. Kern*, [224 Neb. 177, 397 N.W.2d 23 (1986)]; *State v. Heathman, supra*; *State v. Fallis*, 205 Neb. 465, 288 N.W.2d 281 (1980); *State v. Ell*, 196 Neb. 800, 246 N.W.2d 594 (1976).

"As noted in *State v. Bradley, supra*, voir dire examination provides the best opportunity to determine whether venue should be changed. . . ."

"[T]he law does not require that a juror be totally ignorant of the facts and issues involved; it is sufficient if the juror can lay aside his or her impressions or opinions and render a verdict based on evidence presented in court." *State v. Bradley*, 236 Neb. 371, 386, 461 N.W.2d 524, 536 (1990).

After McHenry made his motion to change venue, the judge ordered that the voir dire proceed and that if it became apparent that a fair and impartial jury could not be selected, then he would consider the motion. Some of the prospective jurors had seen the newscasts the previous night. The court asked those prospective jurors who had responded that they had seen the newscasts if any of them were not capable of taking an oath and deciding the case solely on the evidence. None responded that they were incapable of deciding the case solely on the evidence. Upon questions from McHenry's attorney, none indicated they

remembered anything remarkable from the newscasts. In fact, as McHenry admits, none of the venirepersons who had seen the newscasts specifically recalled the mention of polygraph examinations. None indicated that they could not be fair and impartial. McHenry then passed the jury for cause.

If McHenry indeed thought that a fair and impartial jury could not be found, he should have challenged the whole jury panel for cause. McHenry is unable to show that he was prejudiced by the existence of pervasive and misleading pretrial publicity and that the publicity made it impossible to secure a fair and impartial jury. Accordingly, the trial court did not abuse its discretion in not granting McHenry a change of venue, and McHenry's second assignment of error is meritless.

McHenry alleges in his third assignment of error that the district court erred in failing to grant McHenry's requests that the venirepersons be sequestered during jury selection. McHenry claims that the reports on the polygraph examination matter were highly prejudicial and that he needed to question each juror individually to ascertain the amount of influence the newscasts had upon each juror. McHenry argues that he would not be able to thoroughly explore the possibility that jurors had been influenced by the newscasts without contaminating the whole venire.

"Except when there is a showing that without sequestration a party's rights would be prejudiced, a party has no right to examine a venireperson out of the presence of all other venirepersons." *State v. Thompson*, 244 Neb. 375, 407, 507 N.W.2d 253, 274 (1993). Accord *Bradley, supra*. In *Bradley*, the defendant argued that he was unable to ask the "searching questions" required under the circumstances, just as McHenry now argues. We found the record in *Bradley* to be "replete with questions regarding pretrial publicity and whether such publicity had caused anyone to form an opinion as to Bradley's guilt or innocence." *Bradley*, 236 Neb. at 387, 461 N.W.2d at 537. Likewise, we also find the record in McHenry's case replete with questions regarding the effects of pretrial publicity, and we are satisfied with the measures taken to ensure that McHenry received a fair and impartial jury to hear his case.

The judge and both attorneys questioned thoroughly those

jurors who indicated that they had seen the newscasts. None of the jurors who had seen the newscasts gave any indication that the newscasts influenced their ability to be fair and impartial. McHenry has no basis on which to assert that further indepth questioning of sequestered jurors would reveal anything more than was ascertained during jury selection. Furthermore, McHenry did not object to the jury panel as a whole; he passed for cause. Indeed, this action is a strong indication that McHenry was satisfied with the jury selected and must have thought the jury to be fair and impartial. McHenry cannot show how he was prejudiced by the district court's failure to grant his motion for sequestration of the jury, and thus his third assignment of error is meritless.

McHenry claims in his fourth assignment of error that the district court erred in excluding a potential juror from the venire based on her statements of her religious beliefs. Prior to jury selection, a potential juror gave the bailiff a message indicating that the potential juror, based on her religious beliefs, could not judge her fellow human beings. Upon questioning by the court and both attorneys, the excused juror testified that she could not listen to the evidence and be impartial. McHenry argues that excusing the juror denied McHenry his right to a fair and impartial jury.

"[T]he retention or rejection of a venireperson as a juror is a matter of discretion with the trial court." *State v. Bradley*, 236 Neb. 371, 388, 461 N.W.2d 524, 538 (1990). "A juror who has indicated an inability to fairly and impartially determine guilt by refusing to subordinate his [or her] own personal views . . . must be excused for cause." *State v. Benzel*, 220 Neb. 466, 477, 370 N.W.2d 501, 510 (1985). See, also, *State v. Rowe*, 210 Neb. 419, 315 N.W.2d 250 (1982); *State v. Kirby*, 185 Neb. 240, 175 N.W.2d 87 (1970). Here, the excused juror testified that she was not able to subordinate her personal religious views and was correctly excused for cause. Therefore, we find the district court did not abuse its discretion, and McHenry's fourth assignment of error is meritless.

McHenry alleges in his fifth assignment of error that the district court erred in imposing a sentence not authorized by law. The State agrees. As part of McHenry's sentence, the

district court ordered him to spend 4 days per year in solitary confinement. Neb. Rev. Stat. § 29-2204 (Supp. 1993), effective before McHenry was sentenced, eliminated the provisions authorizing the court to impose solitary confinement as part of a sentence. We agree with McHenry and the State that the court imposed a sentence not authorized by law.

McHenry alleges in his sixth assignment of error that the district court erred in failing to grant a mistrial based upon improper comments made by the prosecuting attorney. McHenry's attorney asked the State's witness a series of questions on cross-examination relating to whether the witness was receiving any special treatment regarding the witness' own trial for a separate offense in exchange for the witness' testimony. The questions were quite confusing, and it was obvious that McHenry's attorney and the witness were not talking about the same trial. When the witness answered that he had gotten "this case" continued for 3 years, the prosecutor interjected the statement "That's not true." McHenry motioned for a mistrial. The jury was excused, and the judge admonished the prosecutor for improperly commenting on the evidence. The prosecutor was not admonished in front of the jury, nor was the jury instructed to disregard the prosecutor's statement.

Before it is necessary to grant a mistrial due to prosecutorial misconduct, the defendant must show that a " 'substantial miscarriage of justice has actually occurred.' " *State v. Valdez*, 239 Neb. 453, 457, 476 N.W.2d 814, 817 (1991). "[R]eversal of a judgment may be ordered for failure of the trial court to grant a mistrial when a proper admonition or instruction to the jury . . . is not given." *State v. Fraser*, 230 Neb. 157, 162, 430 N.W.2d 512, 515 (1988). Since the judge did not admonish the prosecutor in front of the jury or instruct the jury to ignore the comment, McHenry could show that a substantial miscarriage of justice has occurred. However, since the cause has been remanded for a new trial on the first assignment of error, further discussion on this matter is not necessary as it is not dispositive of the case.

Having found reversible error in the first assignment of error, we reverse the judgment and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

WRIGHT, J., concurring in part, and in part dissenting.

I concur with the majority's disposition of assignments of error Nos. 2 through 5. However, I respectfully dissent from the majority's disposition of assignments of error Nos. 1 and 6.

With respect to assignment of error No. 1, I do not think that the trial court's pretrial explanation of the reasonable doubt standard lowered the State's burden to prove McHenry guilty. The comments to which the majority objects were made to the panel of prospective jurors before the jury was selected and before commencement of the trial. When I read the comments in their entirety, it is my opinion that the court was telling the prospective jurors that they could not convict McHenry unless they were convinced of his guilt. The court emphasized the burden of proof that the State must meet in order to obtain a conviction and explained that proof beyond a reasonable doubt required proof so compelling as to convince the prospective jurors of the truth of the fact to the extent that they would be willing to act upon such belief without reservation in an important matter in their own business or personal affairs.

The court noted that

> [t]he burden is very heavy upon the [S]tate. Some people say the scales of justice have to tip almost to the bottom. Some people put it in a numerical relationship, "It's got to be 99 out of 100." I don't know what the answer is. Each jury decides that based upon the evidence and the instructions.

The jury was later selected from the panel of prospective jurors, and the trial commenced.

At the conclusion of the evidentiary phase of the trial, the court gave the following reasonable doubt instruction to the jurors:

> The defendant is presumed to be innocent of the charges contained in the information. This presumption remains with the defendant throughout the trial and is not overcome unless you are convinced beyond a reasonable doubt that the defendant is guilty.
>
> The fact that the State of Nebraska has charged the defendant in an information is not evidence, and the State has the burden of proving the guilt of the defendant beyond

a reasonable doubt. This burden remains on the State throughout the trial. The defendant is not required to prove his innocence. The State is not to prove guilt beyond all possible doubt or to a mathematical certainty. Nor is the State required to negate every conceivable circumstance of innocence.

A reasonable doubt is a doubt formed upon reason. It is not a fanciful doubt, a whimsical doubt or capricious doubt. Proof beyond a reasonable doubt requires proof so compelling as to convince you of the truth of a fact to the extent that you would be willing to act upon such belief without reservation in an important matter in your own business or personal affairs. However, if you are not satisfied of the defendant's guilt to that extent, then reasonable doubt exists[,] and the defendant must be found not guilty.

As the majority notes, the actual jury instruction met the due process requirements. All the instructions given must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *State v. Gatson*, 244 Neb. 231, 505 N.W.2d 696 (1993). As I read the instructions given at the conclusion of the evidence, I find that they correctly state the law, are not misleading, and adequately cover issues supported by the pleadings and the evidence, and I do not find any prejudicial error which would necessitate a reversal.

As to assignment of error No. 6, regarding alleged misconduct by the prosecutor, I find that McHenry has not shown that a substantial miscarriage of justice actually occurred. See *State v. Valdez*, 239 Neb. 453, 476 N.W.2d 814 (1991). On cross-examination, one of the State's witnesses was questioned regarding whether that witness was receiving any special treatment in exchange for his testimony in McHenry's trial. Defense counsel asked, "You've gotten this case continued several times, haven't you?" The witness responded, "It's been continued for three years, yes." In response to this remark, the prosecutor interjected, "That's not true." The jury was excused, and the prosecutor was admonished for improperly

commenting on the evidence. The jury was not instructed to disregard the comment.

It is obvious that the witness was not referring to the case involving McHenry, because the crimes for which McHenry was charged took place in July 1992 and the trial commenced in September 1993. The witness was referring to a matter pending in the State of Kansas, and the county attorney in Lincoln County, Nebraska, would have nothing to do with the 3-year continuance of a matter pending in Kansas. Although the prosecutor's comment was improper, I cannot say that a substantial miscarriage of justice actually occurred.

For the reasons set forth herein, I would affirm the judgment of conviction.